UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WALTER SUTTLES, | ) | Case No. 5:02 CV 2218 |
| | ) | |
| Petitioner, | ) | Judge James S. Gwin |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| JULIUS WILSON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Walter Suttles is a prisoner in state custody serving a sentence which he calculates to be 25 years to life on convictions for murder, having a weapon while under disability and tampering with evidence.  In this counseled petition filed under 28 U.S.C. §2254 Suttles seeks new trial on the following four grounds:

Ground One: Mr. Suttles' constitutional rights to due process and against self-incrimination, as guaranteed by the Fifth and Fourteenth Amendments, and his rights to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments, were violated when the prosecutor's closing argument to the jury posited the defendant's silence as evidence of the defendant's guilt.

Ground Two: Mr. Suttles' right to due process, guaranteed by the Fifth and Fourteenth Amendments, was violated when he was convicted in the absence of sufficient evidence to sustain the State's burden on each and every element of the offense.

Ground Three: Mr. Suttles' multiple and consecutive sentences for firearms specifications violate the Double Jeopardy and Due Process Clauses of the Fifth and Fourteenth Amendments as the predicate crimes for those specifications were committed as part of the same act or transaction.    Ohio  Revised  Code  Section

5:02 CV 2218                                        2

> 2929.14(D)(1)(b) specifically prohibits the imposition of multiple sentences for firearms specifications when the predicate crimes for those specifications are committed as part of the same act or transaction.  The multiple and consecutive sentences received by Mr. Suttles exceed the punishment provided for by the Ohio General Assembly and therefore the sentences violate the Double Jeopardy and Due Process Clauses of the Fifth and Fourteenth Amendments.

Ground Four:         Mr. Suttles was denied his right to the effective assistance of counsel at trial and on direct appeal, in violation of the Sixth and Fourteenth Amendments.  The refusal of the Ohio Court of Appeals to reopen the defendant's appeal violated Mr. Suttles' rights to due process and to the effective assistance of counsel on appeal.  Mr. Suttles' appellate counsel failed to raise trial counsel's blatant conflict of interest, as well as three other instances of ineffective assistance of trial counsel and three other substantive trial errors, as assignments of error on appeal.

Respondent has conceded that Suttles has exhausted his state remedies with respect to these grounds.


*Federal Standard of Review:*

For purposes of federal collateral review, claims of trial error as well as ineffective assistance of counsel like all claims adjudicated on their merits by state courts, are governed by 28 U.S.C. §2254(d)(1) and (2).  *See Bell v. Cone*, 535 U.S.685, 122 S.Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).  Under the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) [28 U.S.C. §2244(d)] the applicable limited standard of review states:

5:02 CV 2218                                  3

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim  - - -
>
> (1) resulted in a decision that was *contrary to*, or involved an *unreasonable
> application* of, clearly established Federal law, as determined by the Supreme
> Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding (emphasis
> supplied).

The phrases "contrary to" and "unreasonable application" are not the same.  *Lockyer*, 538 U.S. 63, 75-76, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003).  Under the "contrary to" standard of review, the state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite that reached by the Supreme Court on a question of law or if the state court decides a case differently than "the Supreme Court  has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-13 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Harris v. Carter*, 337 F.3d 758, 761 (6th Cir. 2003);  *Joshua v. DeWitt*, 341 F.3d 430, 436 (6th Cir. 2003).   Under those circumstances the Supreme Court has held that the federal court on habeas review may grant the writ.  *Id.*

Under "unreasonable application" standard "the state court identifies the correct governing legal rule from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413; *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003);  *Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003), *cert. denied*, - U.S. -, 124

5:02 CV 2218                                    4

S.Ct. 1178, 157 L.Ed.2d 1211 (2004).  The state courts's application must be "objectively unreasonable."
*Harris*, 337 F.3d at 361 quoting  *Williams* at 411.  "A state court's application of federal law is
unreasonable and habeas relief may be granted if 'state court decision is so clearly incorrect that it would
not be debatable among reasonable jurists.'" *Joshua*, 341 F.3d 346-47; *Herbert v. Billy*, 160 F.3d 1131,
1135 (6th Cir. 1998), quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996).  This is not to say
that under the "unreasonable application" standard,  independent review of the record is forbidden on
habeas review, but where the state court has articulated its reasoning the federal court is prohibited from
substituting its own independent judgment on what the state court should have considered in reaching its
conclusion.  *Joshua*, 341 F.3d at 442.


        The phrase "clearly established Federal law" refers to holdings as opposed to *dicta* of the
Supreme Court's decision as of the time of the relevant state-court decision.  *Lockyer v. Andrade*, 538
U.S. -, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. at 412; *Bell v.
Cone*, 535 U.S. at 698.


                                              I.

        In his first ground of infringement of his right to silence, Suttles emphasizes that he had two trials.
The first ended in mistrial due to the jury's inability to reach a verdict.  Obviously the jury rejected Suttles'
claim of self-defense in the second trial.  Suttles claimed that he shot Marcus Cunningham while
Cunningham stood in the parking lot, and he, Suttles, stood near the door of the Zulu Club in self-defense

5:02 CV 2218                                          5

and in defense of Suttles' two associates who were being attacked by Cunningham, and in defense of other club patrons.  Suttles testified at his second trial that the incident occurred on January 24, 1998 while he was celebrating his 37th birthday with friends and family at the Zulu Club in Akron, Ohio.  The victim of the murder, Cunningham, was also at the club.  Cunningham left the club briefly to return to his car for his pager when he discovered that his car window had been smashed.  He then returned to the club and found his girlfriend in the ladies' room and accosted her.  Suttles went back to investigate the incident and was told by his cousin that he had Cunningham under control.  Suttles then became aware that Cunningham was causing another problem at the club and Suttles approached him and told him to cease and desist.  At that point Cunningham became very loud and abusive and told Suttles he wouldn't leave and he continued to "badmouth" both Suttles and the club.[1]  Suttles obtained a beer for Cunningham and attempted to escort him out the door at which point Cunningham threw his beer can at Suttles and sprinted out of the club with the beer can hitting Suttles' sister in the head.  Suttles saw Cunningham running into the parking lot and assumed that Cunningham was retrieving a gun to return to the club and cause more trouble.  Anticipating this, Suttles returned to the bar, retrieved the gun and clip that was kept there for protection and returned to the front door of the club.  Suttles observed Cunningham returning to the club and saw him hit Billy Calloway and then saw him swing at Suttles' brother, Paul Suttles.  Suttles told Cunningham to "get back."  Cunningham then turned toward Suttles and Suttles pulled the trigger.  Suttles further stated upon returning into the club building, a Mr. Anderson asked him to hand over the gun and then Suttles left the club with Ronnie Smith and went directly home and remained there until the police arrive the next morning on January

---

[1] Suttles was national president of the Zulu Club, a motorcycle club (TR. 823).

5:02 CV 2218                                               6

25, 1998.   (See, Brief of Petitioner, Exhibit K, at 3-4, Docket No. 17).  Suttles on cross admitted that

he had not seen that Cunningham had a bat ("I found out what it was after the events, so I could not say

exactly what it was after the fact, but while it was happening I couldn't tell you what it was" (TR. 859)).


          The state pointed out that the police went to the Zulu Club shortly after the shooting occurred and

went to Suttles house about 5:30 a.m. approximately three hours after the shooting.  When the police

arrived, they knocked at Suttles' door and they informed him they needed to ask him about the incident

at the Zulu Club.  Suttles was calm and quiet and said nothing to the police.  He was taken into custody

and brought downtown for questioning.  He was later arrested and charged for the shooting of Marcus

Cunningham (See Brief of State of Ohio, Exhibit L, at 5, Docket No. 17).


          After this evidence was presented to the jury, the prosecution in closing made the following three

comments to which Suttles objected.

> Walter Suttles is described, his demeanor is described for you by the police, he's
> calm, doesn't ask any question about why they are there, and certainly he has
> every right to remain silent and not say anything, but certainly the police gave him
> the opportunity to give his version of anything that had happened.
>
> * * *
>
> You certainly heard from the Defendant.  You certainly learned that in this
> particular case that when the police come to his house, you know that he is calm,
> you certainly know that he told the police that he had fired a gun on New Years
> Eve and he appears here and tells you, oh, no, that's not true.  I told them that, but
> that's not true.  Of course he didn't tell them he had shot somebody in self-
> defense.

5:02 CV 2218                                    7

> * * *
>
> Well, he so honestly believed, so honestly believed that he had acted in self-defense, that he fled in a matter of a few minutes * * * has all these opportunities to state when the police come.

The state appellate court on direct appeal, in denying Suttles' argument, provided the last reasoned state court decision on the first of these three grounds in which it analyzed the first ground of infringement on the right to silence under *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), and *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980).  The Fifth and Fourteenth Amendments forbid the prosecution from commenting on the accused's silence as evidence of guilt.  See *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1279, 14 L.Ed.2d 106 (1965).  This protection was extended to impeachment in *Doyle v. Ohio* to disallow the prosecution's use of post-*Miranda* warning silence, and this protection was more carefully tailored around its *Miranda*-based core in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), to allow impeachment by post-arrest but pre-*Miranda* warning silence.  See *Combs v. Coyle*, 205 F.3d 269, 280 (6ᵗʰ Cir. 2000), *cert. denied*, 531 U.S. 1035 (2000); *Seymour v. Walker*, 224 F.3d 542, 559-60 (6ᵗʰ Cir. 2000).  Suttles testified at his second trial.  Of course, had Suttles chosen not to testify, then *Griffin* would have governed and there would be no question over the impropriety of the closing remarks.

The decision in *Doyle* was based on due process and the implicit assurance that silence will carry no penalty (*Id.*, 426 U.S. at 618), whereas *Jenkins* was focused on the Fifth Amendment.  That distinction

5:02 CV 2218                                8

though carries no significance because analysis of the right to silence under the Fifth and Fourteenth Amendments is unified. See *Missouri v. Seibert*, - U.S. -, 124 S.Ct. 2601, 2607 (June 28, 2004); *Malloy v. Hogan*, 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The question of voluntariness of the statements under the Fifth Amendment and their admissibility into evidence in consideration of due process is one and the same.

In *Jenkins*, "the prosecutor again referred to the petitioner's pre-arrest silence. The prosecutor noted that petitioner had 'waited two weeks according to the testimony . . . at least two weeks before he did anything about surrendering himself or reporting [the stabbing] to anybody.'" *Jenkins*, 447 U.S. at 234. Under somewhat similar circumstances, Suttles had the opportunity to explain self- defense to the police officers but remained silent. In *Jenkins* the court ruled against the argument that "a person facing arrest will not remain silent if his failure to speak later can be used to impeach him." *Id.*, U.S. at 236. *Jenkins* explained there is no violation of the Fifth and Fourteenth Amendment's right of silence by permitting the use of silence for impeachment purposes, but while permitting impeachment by silence, the Supreme Court avoided addressing the potential use of silence as substantive evidence of guilt. *Jenkins*, 447 U.S. at 236 n. 2; *Combs,* 205 F.3d at 283; *Seymour*, 224 F.3d at 559-60.

Statements made in closing are more weakly connected to impeachment  than comments made during cross-examination. *Seymour*, at 560. The closing remarks, however, were arguably limited to impeachment of the self-defense claim and were not assertions of substantive evidence of murder directly.

5:02 CV 2218                                      9

This is certainly a close case, but the purpose of federal habeas corpus is not to obtain a *de novo* federal adjudication, but to establish that the state adjudication was incorrect under §2254(d) standards.  The Supreme Court has provided no bright line rule to determine the point at which closing remarks on pre-arrest and pre-*Miranda* silence cross over into the forbidden area of substantive evidence of guilt. Further, in this counseled petition, Suttles makes no claim  to distinguish his case from the general holding and application of *Jenkins*.   Consequently, Suttles has not established either adjudication on the merits contrary to or involving an unreasonable application of clearly established federal law nor an adjudication based on an unreasonable determination of the facts.


                                          II.

     Under his second ground Suttles contends there is insufficient evidence to support the conviction. The state appellate court on direct appeal was the last reasoned decision adjudicating the merits of this claim in which it applied the standard that the court may only overturn a jury verdict as against the manifest weight of the evidence only in the exceptional case where the evidence presented weighs heavily in favor of the defendant.  See *State v. Otten*, 33 Ohio App.3d 339 (1986); *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).  Before the Court of Appeals Suttles had argued that his conviction was against the manifest weight of the evidence because the evidence of self- defense negated the "purposeful" element of murder.   He attacked the credibility of the state's witnesses and contended that his own facts overwhelmingly established that he was acting in self- defense or the defense of others at the time he pulled the trigger.  The state court ruled that this was a credibility determination to be made by the jury and that

5:02 CV 2218                                      10

the conviction was not against the manifest weight of the evidence.  See *State v. Suttles*, 2000 WL 1706382 at *4.  The state appellate court also rejected Suttles' argument that self-defense negated conviction for having a weapon while under disability.  *Id.* at *5.

All that Suttles presents to the district court is the argument that he acted in self- defense which negates the "acting with purpose" required for the conviction of murder in the State of Ohio.

The state had argued that self- defense is an affirmative defense for which defendant must show he was not at fault in creating the situation that led to the affray.  See *State v. Williford*, 49 Ohio St.3d 247, 249, 51 N.E.2d 1279 (1990); *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997).  The state had maintained that Suttles was responsible for having Marcus Cunningham removed from the club and so arguably did create the situation leading up to the shooting.  Secondly, there must be a *bona fide* belief of imminent danger of death or great bodily harm and that the only means of escape from such danger was the use of force.  *Id.*  The state had argued that  Suttles did not have a reasonable belief of imminent death or bodily harm and that under the theory that he was acting to defend others, Suttles' witnesses gave contradictory testimony that did not corroborate each other's statements.  Suttles himself had stated on cross-examination that he had not seen what Cunningham had in his hand and he never saw a bat.

Respondent summarizes the evidence to demonstrate that there was sufficient evidence to support all convictions.  In response, Suttles makes no attempt to establish a lack of evidence.  Under the federal

5:02 CV 2218                                           11

standard of review for sufficiency of the evidence, the issue is "whether, after viewing the evidence in the

light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of

the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61

L.Ed.2d 560 (1979).  Under this standard, the state had made its case on each conviction.[2]  Suttles has

failed to put forth clear and convincing evidence that the state court decided any factual issue unreasonably.

See 28 U.S.C. §2254(e)(1).   Suttles has not established either an adjudication on the merits contrary to

or involving unreasonable application of clearly established federal law or an adjudication that resulted from

an unreasonable determination of the facts.


                                                III.


        Suttles contends in his third ground that the multiple and consecutive sentences for three firearm

specifications violate double jeopardy and the due process clause of the Fifth and Fourteenth Amendments

since the predicate acts were committed as part of the same act and transaction, and Ohio Rev. Code

§2929.14(D)(1)(b) specifically prohibits the imposition of multiple sentences for firearms convictions when

the predicate crimes for those specifications are committed as part of the same act or transaction.


        The double jeopardy clause of the Fifth Amendment protects criminal defendants from successive

prosecutions for the same offense after acquittal or conviction as well as from multiple punishments for the

_____

        [2] Suttles was required under 28 U.S.C. §2254(f) to "produce that part of the record pertinent to a determination
of sufficiency of the evidence to support such determination."  Respondent has produced the record, but Suttles has
not so much as referred to any particular witness let alone transcript sections.

5:02 CV 2218                                           12

same offense.  See *Brown v. Ohio*, 432 U.S. 161, 165, 97 S.Ct. 221, 53 L.Ed.2d 187 (1977).

However, the general rule from *Missouri v. Hunter* is that where the legislature has specifically authorized

cumulative punishment under statutes which arguably proscribe the same conduct,  multiple punishment

does not violate double jeopardy protections.  *Id.*, 459 U.S. 359, 368-69, 103 S.Ct. 673, 679, 74

L.Ed.2d 535 (1979).


It is clear under §2929.14(D)(1)(a) that the Ohio legislature has concluded that  multiple sentences

may be imposed for firearm violations.  See *Carter v. Carter*, 59 Fed. Appx. 104, 2003 WL 356176 (6th

Cir. Feb. 14, 2003) (discussing multiple punishments) .  The Ohio statutes in general indicate clear

legislative intent to require Ohio courts to impose cumulative penalties for different specifications (*Id.* at *4),

except where the violation was "committed as part of the same act or transaction."  (See Ohio Rev. Code

§2929.14(D)(1)(b) (Anderson 2003) (Offenses committed on or after July 1, 1996).


It was on this issue that Suttles had an unfortunate result in his direct appeal when the state appellate

court found that there had been trial court error in sentencing, and remanded the matter for an *increased*

sentence on firearm specifications.  See *State v. Suttles*, 2000 WL 1706382 at *6-8.  The state court

acknowledged that Ohio Rev. Code §2929.14(D)(1)(b) did prohibit multiple punishments based on the

same act or transaction, and a transaction encompasses a series of continuous acts bound together by time,

space and purpose which are directed toward a single objective under *State v. Wills*, 69 Ohio St.3d 690,

635 N.E.2d 370 (1994).  The state appellate court found each firearm violation to constitute a separate

5:02 CV 2218                                    13

act and transaction.[3]   This decision was an application of the correct state standard.  In *State v. Wills*, the Ohio Supreme Court defined "transaction" as used under a former version of this provision then contained in Ohio Rev. Code §2929.71(B), as "a series of continuous acts bound together by time, space and purpose and directed toward a single objective."  *Id.* at 691.

Suttles maintains that the facts in evidence established only that he picked up the firearm, shot it once and immediately handed it to a third party, and that the acts in question all took place in a matter of minutes, all occurred at the same location and were all directed toward Suttles' defense of himself and others.  He argued that the gun specifications should have been merged for purposes of sentencing and that even if handing the gun to a third party is considered separate and apart from the shooting, picking up a gun and then shooting the gun must be part of the same act or transaction.

The trial court had merged the firearm violations attached to the offenses of murder and tampering with evidence, but refused to merge the violation attached to the charge of having a weapon while under disability.  The state appellate court, though, found any merger improper because,  "Suttles committed the charge of having a weapon while under a disability when he picked up the gun and walked across the bar. Suttles committed murder when he shot Cunningham. Suttles committed the act of tampering with evidence after he shot Cunningham, when he attempted to hide the rifle by giving it to a friend.  Each of these acts

_____

[3] Government's seeking review of defendant's sentence on appeal does not affect double jeopardy protection. See *U.S. v. DiFrancesco*, 449 U.S. 117, 101 S.Ct. 426, 66 L.Ed.2d 328 (1980).

5:02 CV 2218                                  14

were motivated by different purposes or objectives." *State v. Suttles*, 2000 WL 1706382 at *7.  Using

its powers under the 1995 criminal reforms the appellate court remanded for resentencing.  The state

appellate court did not consider federal constitutional issues since no claim was presented based on federal

due process or double jeopardy concerns.  (See Respondent's Exhibit K. pg. 27-33, Docket No. 17).

When the Ohio Supreme Court was first presented with the federal constitutional implications of Suttles'

argument on multiple firearm specification convictions, the Ohio Supreme Court found Suttles' argument

had no merit without explanation.

> Where the state court has failed to articulate its reasoning for its decision, 'federal
> courts are obligated to conduct an independent review of the record and
> applicable law to determine whether the state court decision is contrary to federal
> law, unreasonably applies clearly established law, or is based on an unreasonable
> determination of the facts in light of the evidence presented.'  *Harris v. Stovall*,
> 212 F.3d 940, 943 (6th Cir. 2000) (citations omitted).  'That independent review,
> however, is not a full, *de novo* review of the claims, but remains deferential
> because the court cannot grant relief unless the state court's result is not in keeping
> with the strictures of the AEDPA.'  *Id.*

*Palazzolo v. Gorcyca*, 244 F.3d 512, 516 (6th Cir. 2001), *cert. denied* 534 U.S. 828 (2001); and see

*Onifer v. Tyszkiewicz*, 255 F.3d 313, 316 (6th Cir. 2001), *cert. denied*, 534 U.S. 930 (2001).  Under

this standard, the district court must stay within the "strictures of the AEDPA."  *Id.*  Accordingly, the

undersigned must endeavor to review the record  to ascertain whether there is support in this record for

the state decision.

There is little guidance from the Ohio Supreme Court beyond setting out the standard as "a series

of continuous acts bound together by time, space and purpose and directed toward a single objective."

5:02 CV 2218                                     15

*Id.* at 691.  See *State v. Burch*, 2000 WL 288607 (Ohio App. 7 Dist. March 15, 2000) ("Ohio Supreme Court has not reviewed any lower court's application of this test.").  State court decisions nonetheless have found cumulative punishment authorized for having a weapon while under disability and possession of a firearm.[4]  *State v. Wills* illustrates legislative intent to permit multiple punishments despite coincidental proximity of the two victims.  *Id.*, 69 Ohio St.3d at 691.  At trial the prosecution emphasized Suttles' movements and time between each key event.  The state appellate court reitereated movement as a factor when it emphasized Suttles' walking across the bar at the Zulu Club.

*Wills* illustrates a narrow interpretation of the phrase "same act or transaction" and the state appellate court's decision is consistent with this narrow interpretation.  There is arguable state legislative authorization in the associated state case law to allow cumulative punishment.  Suttles has not established that this decision was contrary to or an unreasonable application of *Missouri v. Hunter*.[5]

IV.

Suttles has placed special emphasis on his fourth ground of ineffective assistance of appellate counsel by focusing his arguments on this issue.  This ground was raised in the Ohio App. R. 26(B)

---

[4] *See State v. Russell*, 1998 WL 3575216 (Ohio App. 4 Dist. June 30, 1998); *State v. Broadus*, 14 Ohio App.3d 443, 472 N.E.2d 50 (1984), (abrogated on other grounds);  *State v. Greco, 1996 WL31147 (Ohio App. 12th Dist. Jan. 29* 1996).

[5] As explained in *Early v. Packer*, 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002), the state court is not required to cite Supreme Court cases or even be aware of them "so long as neither the reasoning nor result of the state-court decision contradicts them."

5:02 CV 2218                                          16

application to reopen appeal which was denied by the state appellate court without explanation and  by the

Ohio Supreme Court as not involving any substantial constitutional grounds.  (Respondent's Exhibit T, W,

Docket No. 17).


As presented in the federal petition, Suttles' fourth ground is composed of seven "subgrounds"

alleging ineffective assistance of appellate counsel for failing to argue:

1. Suttles' trial counsel could not and did not properly represent him in light of the blatant conflict of interest occasioned by trial counsel's simultaneous representation of the state's chief witness against Suttles.

2. Trial counsel were ineffective in conceding the unavailability of a state's witness thus allowing former testimony from the former trial to be read into the record.

3. Trial counsel were ineffective in failing to proffer evidence of unavailable witness bias resulting from a relationship with an investigating police officer.

4. Trial counsel was ineffective for failing to suppress Suttles' custodial statements to police.

5. Suttles was denied due process and fair trial and effective assistance of counsel when the trial court refused to allow inquiry of a police witness on the subject of reasonable use of deadly force and refused to allow defense counsel to put on evidence of reasonableness of the use of deadly force in the defendant's case in chief.

6. Suttles was denied due process and equal protection and fair trial by the trial court allowing the state to use its peremptory challenges in a racially discriminatory manner.

7. Suttles was denied due process and fair trial by the prosecutor's repeated and flagrant misconduct.

5:02 CV 2218                                            17

In his traverse, Suttles has withdrawn several of these subgrounds numbered 4, 6 and 7 (Traverse at 24, Docket No. 28).

Respondent argues that Suttles's claims in his fourth ground of trial court error, prosecutorial misconduct and ineffective assistance of counsel were not presented to the state courts. Respondent is partly correct. Suttles maintained in his memorandum in support of jurisdiction to the Ohio Supreme Court that appellate counsel was ineffective for failing to raise four instances of trial court error. Generally Suttles did not claim that defense trial counsel had been ineffective under these arguments except he raised Sixth Amendment concerns as a subargument to conflict in counsel's representation in his first proposition of law to the Ohio Supreme Court. However, within the seven subarguments now raised, Suttles has raised a new series of arguments involving trial counsel's alleged ineffectiveness.

As respondent argues, federal collateral review of subgrounds 2 and 3 is barred since they are new arguments based on trial counsel's effectiveness. Those issues submitted for habeas corpus review must first be "fairly presented" to the state's highest court, hence exhausted. *Anderson v. Harless*, 459 U.S. 4, 6, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982); *Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Tuggle v. Seabold*, 806 F.2d 87, 91 (6th Cir. 1986); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989). Only in this manner will the state courts have been provided with a fair opportunity to "pass upon and correct alleged violations of federal rights." *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Duncan v. Henry*, 513 U.S. 364, 115 S.Ct. 887, 888, 130 L.Ed.2d 865, 868

5:02 CV 2218                                    18

(1995).  As a result, the petitioner must have presented the "substance of the federal claim to the state's

highest court."  *Picard*, 404 U.S. at 275.


Failure to present the federal grounds to the state courts constitutes procedural default or waiver

barring federal habeas corpus review.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994);  *Leroy v.*

*Marshall*, 757 F.2d 94, 97 (6th Cir. 1985), *cert. denied*, 474 U.S. 831 (1995); *Engle v. Isaac*, 456 U.S.

at 113-14, 117, 124-35; *Teague v. Lane*, 489 U.S. 288, 298-99, 109 S.Ct. 1060, 103 L.Ed.2d 334

(1989).  In order to overcome a procedural default the petitioner must demonstrate both cause and

prejudice, the failure to establish either is sufficient to bar the claim.  *McBee v. Grant*, 763 F.2d 811, 817

(6th Cir. 1985).


Suttles has not demonstrated "cause" to excuse procedural default.  To establish "cause" a

petitioner must present a substantial reason to excuse his procedural default.  *Rust*, 17 F.3d at 161.  This

substantial reason  must be based upon "some objective factor external to the defense . . ."  *Murray v.*

*Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *Ritchie v. Eberhart*, 11

F.3d 587, 491 (6th Cir. 1993), *cert. denied* 510 U.S. 1135 (1994).  There was no external cause for

Suttles' substitution of new grounds in the federal petition.  Further, Suttles cannot now return to exercise

a successive Ohio App. 26(B) application.  See *State v. Peeples*, 73 Ohio St.3d 149, 652 N.E.2d 717

(1995) (Ohio App. R. 26(B) makes no provision for filing successive application to reopen).

5:02 CV 2218                                    19

Consequently, federal review of subgrounds 2 and 3 is barred and Suttles has no vehicle for returning to the state courts.  Consequently, the only subgrounds remaining are 1     and 5.[6]

The first subground that remains concerns trial counsel's conflict of interest.  The district court is confronted by unexplained denials from the state appellate court and Ohio Supreme Court on the argument that a conflict of interest existed due to trial defense counsel's simultaneous representation of Suttles and George Thomas, a witness against Suttles at both trials.

Initially Suttles was represented by Attorney Frank Pignatelli in the first trial but he was subsequently dismissed by Suttles.  Attorney Pignatelli informed the trial court of his dismissal and the court asked if there was any attorney in the courtroom who would be available to proceed with the retrial within nine days.  Attorney Annette Powers agreed, but it was subsequently revealed that she had been representing George Thomas in an unrelated felony case.  George Thomas' testimony was an important component of the state's case against Suttles.  Suttles was also represented by Attorney Renee Green who coincidentally also represented Mr. Thomas at his plea hearing for forgery and  felony cocaine possession. The activities of both these attorneys with Mr. Thomas proceeded well into 1998.  In fact Attorney Powers was able to obtain a plea bargain for Mr. Thomas in this unrelated felony matter. Mr. Suttles now argues that this Thomas plea bargain could be a basis for bias argument.

_____

[6] Respondent opened the door to confusion over the procedural default issue by referring to *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986). The default  is due to federal rules based upon exhaustion and comity which are not subject to analysis under *Maupin*, since this default does not involve  enforcement of a state procedural rule.

5:02 CV 2218                                                20

However, on December 5, 1998 Thomas was permitted to withdraw his pleas prior to the testimony in Mr. Suttles' second trial, which began on December 12, 1998.  Before the second trial commenced, Attorney Powers represented that she had withdrawn her representation of Thomas with the approval of a visiting judge.

Suttles sheds more light on the unusual events in his traverse, and expands on his arguments presented in the petition and more importantly to the state's highest court.  Obviously in reviewing whether the state court decision comported with constitutional requirements or was a reasonable resolution based on the facts, the district court cannot consider new factually-based arguments that could have, but were not presented.  It is especially unfair of Suttles to expand on his arguments in his traverse, after respondent had answered the arguments raised in the petition.  This practice will not be condoned.  "Federal courts sitting in habeas corpus are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings."  *Williams v. Taylor*, 529 U.S. at 437.

In his petition, Suttles argued first that Thomas received consideration from the Summit County Prosecutor's Office in exchange for his testimony due to favorable pleas and sentencing arrangements in the unrelated felony cases.

Second, Suttles argued that the trial judge knew Attorney Powers was representing Thomas when he appointed her to represent Suttles and the trial judge appointed a second attorney, Renee Green, to

5:02 CV 2218                                                21

represent Suttles during Thomas' testimony when Attorney Powers would be required to leave the

courtroom to cure the conflict of interest.

Third, the state had filed a motion to prevent either defense counsel from asking Thomas about the

convictions resulting from the negotiated pleas and explicitly argued there was a blatant conflict of interest.

Because of those events Suttles has now demanded a new trial where he can receive trial counsel

"who are not cutting a deal for one client at the expenses of another."  (Petition at 6).  He argues that

defense counsel failed to inquire of Thomas about any benefit he "might be" receiving from the State in

exchange for his testimony against Suttles.

Suttles also argues that excusal of Attorney Powers from Thomas' case did nothing to change the

reality of the adverse effect caused by the conflict of interest shared by Attorneys Powers and Green.  He

is concerned that neither attorney asked Thomas if he received or expected to receive any consideration

from the state of Ohio in exchange for his testimony as part of the plea agreement.  Suttles had argued

before the Ohio Supreme Court that there should be a rule that when an attorney negotiates a favorable

plea for one client in exchange for that client's testimony as a state witness against another client, the active

representative of competing interests is clearly shown.[7]

---

[7] Suttles had argued to the Ohio Supreme Court that the trial court's actions were tantamount to a denial of
questioning on the plea agreement which was found to be reversible error in *State v. Aldridge*, 3 Ohio App.3d 761 (1981).

5:02 CV 2218                                22

With respect to appellate counsel's effectiveness, the law is clear:

> A defendant is entitled to effective assistance of counsel in connection with a defendant's first appeal of right. *Evitts v. Lucey*, 469 U.S. 387, 396, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). Yet appellate counsel need not raise every nonfrivolous argument on direct appeal. *Jones v. Barnes*, 463 U.S. 745, 751-52, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). To be sure, "'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.' *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986) (quoting *Jones*, 463 U.S. at 751-52, 103 S.Ct. 3308). Appellate counsel, however, is required to exercise reasonable professional judgment. *Jones*, 463 U.S. at 753, 103 S.Ct. 3308. Nevertheless, "only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002) (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

*Joshua*, 341 F.3d at 441.

Although both parties argue with reference to *Mickens v. Taylor*, 535 U.S. 162, 122 S.Ct. 1237 (2002), that case is not precisely on point. It concerned the "question . . . where a trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known." *Id.*. 122 S.Ct. at 1239. The facts in *Mickens* were that Attorney Saunders was representing a juvenile, Hall, on assault and concealed weapons charges on March 20, 1992. On March 30, 1992 Hall's body was discovered and several days later the charges against Hall were dismissed, noting Hall's demise. See *Mickens*, 122 S.Ct. at 1240. On April 6, 2002 the same judge appointed Attorney Saunders to represent Mickens on a charge of the premeditated murder of Hall. Attorney Saunders did not reveal to co-counsel nor to Mickens that he had represented Hall. In contrast, at Suttles' trial the trial court did inquire of Attorney

5:02 CV 2218                                              23

Powers, and Suttles was aware of his defense team's representation of Thomas, as was the prosecution.

The decision does, though, restate the guideposts set by earlier decisions.

Suttles argued that the trial judge should have elicited a narrative statement from Suttles to ascertain

whether Suttles understood the nature of the conflict and its consequences to waive conflict of interest

(Exhibit U at 8).

As explained by *Mickens*, the trial court owes no duty of inquiry even when counsel previously

represented another defendant noting that "the Federal Rules of Criminal Procedure treat  concurrent

representation and prior representation differently" referring to Fed. R. Crim. P. 44(c).  *Id.* at 1245. The

state trial court had assured itself that there was no concurrent representation for an "actual conflict of

interest."

Furthermore, *Mickens* in capsulizing *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55

L.Ed.2d 426 (1976), and *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980),

explained that the determinative factor is defendant's or counsel's timely *objection*, not effectiveness of

any waiver.  *Holloway* created an automatic reversal, "where defense counsel is forced to represent

codefendants over his timely objection, unless the trial court has determined there is no conflict." *Mickens*,

122 S.Ct. at 1241-42; *Holloway*, 435 U.S. at 488.  Whereas in *Cuyler*, "[w]e declined to extend

*Holloway*'s automatic reversal rule . . . and held that, absent objection, a defendant must demonstrate that

5:02 CV 2218                                     24

'a conflict of interest actually affected the adequacy of his representation.'" *Mickens*, 122 S.Ct. at 1241;

*Cuyler*, 446 U.S. at 348-49.  So the question is not so much as whether Suttles knowingly and intelligently

waived multiple representation, but did he object.


As in *Mickens*, where defendant was unaware of potential conflict of interest due to counsel's prior

representation of Hall, the Supreme Court refused to apply *Holloway*'s automatic reversal rule, but applied

*Cuyler*'s rule where defendant must timely object. See *Mickens*, 122 S.Ct. at 1244-45.  Where defendant

fails to timely object the focus is upon "whether counsel was influenced in his basic strategic decisions. .

."  *Mickens*, 122 S.Ct. at 1241, citing  *Wood v. Georgia*, 450 U.S. 261, 272, 101 S.Ct. 1097, 67

L.Ed.2d 220 (1981).


Suttles did not claim he objected.  This placed Suttles in a *Cuyler*-like situation where in general

there is no presumption of prejudice.  See *Mickens*, 122 S.Ct. at 1242.  Applying *Cuyler*, "a defendant

who shows that a conflict of interest *actually affected the adequacy of his representation* need not

demonstrate prejudice in order to obtain relief."  *Cuyler*, 446 U.S. at 349-50; *Mickens*, 122 S.Ct. at

1243.  An "actual conflict of interest" is a conflict that did affect defense counsel's performance as opposed

to "mere theoretical division of loyalties."  *Mickens*, at 1243; *Wood v. Georgia*, 450 U.S. at 273.


Sullivan concedes that he is required to show an actual conflict of interest which adversely affected

counsel's performance, influencing basic strategic decisions. (Traverse at 18).  However, Thomas'

5:02 CV 2218                                    25

withdrawn plea agreement would not have potentially influenced counsel strategies even considering their prior representation and Thomas was no longer under any obligation, assuming there had been one, to testify against Suttles.

Due to the withdrawal of Thomas' plea agreement prior to Suttles' trial there was no longer any matter requiring defense counsel's inquiry.  Under the standards set forth by *Holloway, Cuyler* and *Wood*, Suttles cannot demonstrate an actual conflict affecting the adequacy of his representation.

Furthermore, at the second trial the fact that Thomas was a detainee of the State of Ohio was admitted on direct examination and Thomas appeared in his county-issued orange jumpsuit (TR. 398).  Any promise of leniency in exchange for testimony was at that point a dead issue so trial counsel was not ineffective for failing to raise it, nor was appellate counsel ineffective for not raising a specious conflict of interest argument.

In his fifth and final remaining subground Suttles claims ineffective assistance of appellate counsel for failing to raise the trial court's ruling to disallow testimony about the "Tueller drill."  There was testimony that this drill or a test was used to calculate the number of feet the person with a weapon could run (TR. 288).  Defense counsel wanted to obtain testimony from the police officer based on an article in the local newspaper that under the Tueller drill, a person armed with a contact weapon such as a club or knife could run 21 feet in one and a half to two seconds (TR. 292).  Counsel planned to combine this with testimony that placed Cunningham 15 to 20 feet away from Suttles at the time the fatal shot was fired.

5:02 CV 2218                                          26

Initially the trial court was reluctant because it believed that this was leading to opinion evidence that required expert testimony on this point and no foundation had been laid (TR. 292). The witness however did testify at trial that a person running with a bat would "reduce" the 15 foot distance for that person, and would "reduce" that distance because the person could throw the bat (TR. 295-96). Ultimately the trial court ruled that Tueller drill evidence was not relevant to Suttles' state of mind because the specific results of the test were not known to Suttles (TR. 319-20).

Suttles argues that the ruling based upon subjective intent is inconsistent with the reasonableness standard of self-defense. The underlying assumption to this argument is incorrect. As the jury was instructed, there is a strong subjective component to self-defense under Ohio law. See *State v. Jackson*, 22 Ohio St.3d 281 (1986); *State v. Robbins*, 55 Ohio St.2d 74 (1978); *State v. Wilford*, 49 Ohio St.3d 247 (1990). A defendant has the burden of establishing "reasonable grounds to believe and an honest belief that he was in danger of death or great bodily harm" in establishing self- defense. The jury was instructed on this burden and that the test for reasonableness is "you must put yourself in the position of defendant with his characteristics and his knowledge or lack of knowledge . . ." (TR. 1042, 1044), and see 4 OJI §411.35 "Self Defense - Test for Reasonableness." It is evident that the self-defense is strongly subjective, and knowledge or lack of knowledge is a key component to this defense. Since there is no foundation that Suttles was aware of the newspaper article nor the Tueller drill, the trial court's ruling was correct. Appellate counsel was not ineffective in failing to raise a specious argument.

5:02 CV 2218                                          27

### *CONCLUSION AND RECOMMENDATION*

Following review of the petition and applicable law, it is recommended that Suttles' petition for federal habeas corpus under 28 U.S.C. §2254 be denied.  Suttles has not demonstrated that he is in custody pursuant to judgment of a State court which was the result of a decision that was contrary to or involved the unreasonable application of Federal law as determined by the Supreme Court of the United States or was the result of a decision based on an unreasonable determination of the facts in light of the evidence in the State court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  There has been no demonstrated need for an evidentiary hearing.  It is recommended that the petitioner's application for habeas corpus be denied.

                                   s/James S. Gallas
                            United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).


Dated: August 9, 2004