UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
                                              :
WALTER J. SUTTLES,                            :      CASE NO. 5:02-CV-2218
                                              :
                        Petitioner,           :
                                              :
vs.                                           :      ORDER & OPINION
                                              :      [Resolving Doc. No. 1, 31]
JULIUS WILSON, Warden,                        :
                                              :
                        Respondent.           :
                                              :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On November 12, 2002, Petitioner Walter J. Suttles filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [Doc. 1].  Following his convictions for murder, possession of a weapon while under disability, and tampering with evidence, the state court sentenced Suttles to twenty-five years to life.  With his habeas petition, Suttles now seeks relief from this sentence. Respondent Julius Wilson opposes the petition.  [Doc. 16].

On August 8, 2004, Magistrate Judge James S. Gallas issued a report and recommendation recommending the Court deny Suttles' petition.  [Doc. 31].  Suttles filed objections to the report and recommendation. [Doc. 37].  After conducting a *de novo* review of the report and recommendation, the Court adopts in part and overrules in part the Magistrate's recommendation.  For the reasons discussed below, the Court **GRANTS** in part and **DENIES** in part Suttles' petition for habeas relief.

## I.  BACKGROUND

### A.  *Factual Background*

Case No. 02-cv-2218
Gwin, J.

The instant suit involves a shooting that took place on the evening of January 24, 1998 at the Zulu Club in Akron, Ohio. Petitioner Suttles owned the club. He claims that he shot the victim, Marcus Cunningham, in self-defense and in defense of two associates.

On the night in question, Petitioner Suttles celebrated his thirty-seventh birthday with friends and family at his bar. Cunningham was also at the club, along with his girlfriend, Rachelle Taylor, his cousin, George Thomas, and two other associates.

At some point in the evening, Cunningham realized that his pager was missing. He left the bar to search for the pager in his girlfriend's car. Once outside, he discovered that someone had smashed the back window of his girlfriend's car. Cunningham returned to the club, informed his girlfriend of the broken window, and followed her to the ladies room, where a dispute arose. A club bouncer went to check on the dispute and bar owner Suttles followed. Suttles asked Thomas what was going on and Thomas replied that it was all a misunderstanding. Cunningham then became belligerent, insulted both Suttles and the club, and refused to leave.

At that point, bar owner Suttles told Cunningham that he would have to leave, obtained a can of beer for Cunningham, and attempted to escort him to the door. Cunningham resisted, threw the unopened can of beer at Suttles. The can hit Suttles' sister in the head.

Cunningham left the bar. Some evidence suggests that bouncers from the Zulu Club followed Cunningham and engaged in a fight with him. In the fight, Cunningham lost a shoe. Still outside the bar, he looked for the shoe before going to a vehicle where he obtained a small baseball bat. Meanwhile, Suttles went to the bar and grabbed a rifle that the club kept for protection. When Suttles returned to the front door, he observed Cunningham, who was then carrying a bat, walking back toward the club. Suttles stood at the front door with other members of his motorcycle club.

-2-

Case No. 02-cv-2218
Gwin, J.

Still in the parking lot, Cunningham hit Billy Calloway with the bat and then swung at Suttles'

brother, Paul Suttles.   Suttles says he did not know what Cunningham was swinging.   As

Cunningham ran towards the front of the bar with the bat, Suttles shot and killed him.

Suttles returned to the club where another individual asked him to hand over the gun.  Suttles

gave the gun over.  Suttles then left the club with Ronnie Smith and went directly home, where the

police found him three hours later at approximately 5:30 a.m. on the morning on January 25, 1998.

When the police arrived at Suttles' home, they informed him that they needed to question him about

the shooting.  Suttles remained calm and quiet, saying noting to the police, who then took him into

custody and brought him to the station for questioning.  The police later arrested Suttles and charged

him with the shooting of Marcus Cunningham.

*B.  Procedural History*

1.  Indictment and Conviction

On January 29, 1998, the Summit County Grand Jury issued an indictment against Suttles,

charging him with one count of aggravated murder, in violation of Ohio Rev. Code § 2903.01(A),

with a firearm specification ("count one"), and one count of possession of a weapon while under

disability, in violation of Ohio Rev. Code § 2923.13(A)(2) ("count two").  The Grand Jury issued

supplemental indictments on July 30, 1998 and August 12, 1998, charging Suttles with two

additional firearm specifications in connection with count two of the original indictment.

Suttles pleaded not guilty to all charges and the case proceeded to trial by jury in August of

1998.  This trial resulted in a hung jury and the court set the case for a new trial later that year.  In

the interim, on October 27, 1998, the Grand Jury issued a third supplemental indictment.  This

indictment charged Suttles with possession of a weapon while under disability, in violation of Ohio

-3-

Case No. 02-cv-2218
Gwin, J.

Rev. Code § 2923.13(A)(2), together with two firearm specifications, in violation of Ohio Rev. Code

§§ 2941.141, 2941.145 ("count five").  Finally, on December 1, 1998, the Grand Jury issued a fourth

supplemental indictment, charging Suttles with one count of tampering with evidence, in violation

of Ohio Rev. Code § 2921.12(A)(1), and two firearm specifications, in violation of Ohio Rev. Code

§§ 2941.141, 2941.145 ("count six").

    Once again, Suttles pleaded not guilty to all charges and a second jury trial ensued.  The jury

ultimately found Suttles guilty of the following charges: (1) murder (the lesser included offense of

aggravated murder) with a firearm specification; (2) possession of a weapon while under disability,

with two accompanying firearm specifications; and (3) tampering with evidence, with two firearm

specifications.

    The trial court sentenced Suttles to: (1) an indeterminate term of fifteen years to life for

murder, with a three-year mandatory sentence for the firearm specifications on count one; (2) a term

of one year for possession of a firearm while under a disability, with a one-year mandatory term for

the firearm specifications on count two; and (3) a term of five years for tampering with evidence,

also with a one-year mandatory term for the firearm specifications on count six.  The Court merged

the two one-year sentences for the firearm specifications attached to counts two and six, and ordered

that this merged one-year sentence be served consecutively with the three-year sentence for the

firearm specification attached to count one.  It further ordered that the sentences imposed on the

underlying offenses be served consecutively.

2.  Direct Appeal

    Suttles filed a timely appeal of his conviction, raising the following assignments of error:

    a.        The trial court erred to the prejudice of the defendant-appellant in overruling

-4-

Case No. 02-cv-2218
Gwin, J.

        his motion for mistrial on the grounds that the actions of the prosecutor in closing argument to the jury were in violation of his constitutional right against self-incrimination, as guaranteed by the Fifth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution, in that appellant had an absolute right to remain silent and the prosecutor's reference to that silence, with its implication of guilt, was prejudicially erroneous and a violation of his due process right to a fair trial.

    b.    The verdicts returned by the jury of guilty for murder, having a weapon under disability, and tampering with evidence, were not supported by sufficient evidence and/or were against the manifest weight of the evidence.

    c.    The sentence impose by the trial court amounted to an abuse of discretion and a violation of appellant's right to due process.

On November 15, 2000, the Ohio Court of Appeals for the Ninth District in Summit County issued a decision affirming the judgment of the trial court in all respects except one. The Ohio Court of Appeals opinion is remarkably weak. Recall, Suttles raised an argument that the trial evidence was not sufficient to support his conviction. In ruling on this assignment of error and in finding the evidence sufficient to support a conviction, the Ohio Ninth District Court of Appeals does not describe a single fact to support the convictions. It provides no statement of facts. Reviewing the appeal of a man sentenced to life imprisonment with no opportunity for parole for twenty-five years, the Court of Appeals gave the assignment of error two pages, all of them either the procedural history or boilerplate. *See State v. Suttles*, No. 19453, 2000 WL 1706382, at *3 (Ohio App. 9th Dist. Nov. 15, 2000) (unpublished decision). Not once does the Ohio Court of Appeals identify one line of testimony to support its conclusions. Apart from the conclusions reached by the Ohio Court of Appeals, nothing describes the evidence that supports those conclusions.

With regard to sentencing, the court vacated the sentences imposed on each of the firearm specifications. The court remanded the matter to the trial court, ordering it to impose a three-year

-5-

Case No. 02-cv-2218
Gwin, J.

mandatory sentence on each of the firearm specifications attached to the three underlying offenses.

The court also held that the specifications did not merge and ordered that the sentences be served

consecutively.

Suttles then filed an appeal in the Ohio Supreme Court, raising the following propositions

of law:

> a.  When a prosecutor addressing a jury at closing argument posits the
> defendant's silence as evidence of the defendant's guilt, such argument is a
> direct violation of the defendant's constitutional rights to due process and
> self-incrimination, as guaranteed by the Fifth and Fourteenth Amendments
> to the United States Constitution and Sections 10 and 16, Article I of the Ohio
> Constitution; and the defendant's constitutional right to a fair trial, as
> guaranteed by the Sixth and Fourteenth Amendments to the United States
> Constitution and Section 5, Article I of the Ohio Constitution.

> b.  Convictions not supported by sufficient evidence to sustain the State's burden
> on each and every element of the offense are unconstitutional; incarceration
> pursuant to such a conviction is a violation of the due process of law
> guaranteed to all persons by the Fifth and Fourteenth Amendments of the
> United States Constitution and Section 16, Article I of the Ohio Constitution.

> c.  R.C. 2929.14(D)(1)(b) prohibits the imposition of multiple sentences for
> firearms specifications when the multiple predicate crimes for those
> specifications were committed as part of the same act or transaction.
> Multiple sentences that violate this statutory command also violate the
> Double Jeopardy and Due Process Clauses of the Fifth and Fourteenth
> Amendments to the Untied [sic] States Constitution and Sections 10 and 16,
> Article I of the Ohio Constitution.

On March 21, 2001, the Ohio Supreme Court denied Suttles leave to appeal.  *State v. Suttles*,

91 Ohio St.3d 1472, 744 N.E.2d 193 (Ohio 2001) (table).

3.  Application To Reopen Direct Appeal

On February 13, 2001, Suttles filed an application to reopen his case pursuant to Ohio

Appellate Rule 26(B) ("*Murnahan* motion") in the Ninth District Court of Appeals.  With his

Case No. 02-cv-2218
Gwin, J.

application, Suttles alleged ineffective assistance of appellate counsel due to counsel's failure to

raise the following claims on direct appeal:

    a.    The trial court erred when it assigned trial counsel whom the trial court knew to represent the State's chief witness and exacerbated this error by crafting a co-counsel arrangement that placed expediency above constitutionality, in violation of Walter J. Suttles' due process rights under the United States and Ohio Constitutions, including his right to a fair trial and to the effective assistance of counsel. (Transcript of 8/11/98 at 2-13, Second Trial Transcript, passim).

    b.    The trial court erred when it refused to allow defense counsel to inquire of a police witness on the subject of the reasonableness of the use of deadly force against and armed attacker, and further erred by not allowing defense counsel to put on such evidence in Mr. Suttles' case-in-chief, in violation of his due process rights under the United States and Ohio Constitutions, including his right to a fair trial and to the effective assistance of counsel. (Second Trial Transcript at 288-292, 320-323).

    c.    The trial court erred when it allowed the State the use of peremptory challenges in a racially discriminatory manner during voir dire and thus violated Mr. Suttles' rights as guaranteed by United States and Ohio Constitutions, include his right to a fair trial and to the effective assistance of counsel. (Second Trial Transcript of Voir Dire, Vol. II, at 261, 264).

    d.    The repeated and flagrant misconduct of the prosecuting attorney during her rebuttal closing argument violated Mr. Suttles' rights as guaranteed by the United States and Ohio Constitutions, including his right to a fair trial. (Second Trial Transcript, Vol. IV, at 987-1031).

On July 31, 2001, the Court of Appeals denied Suttles' motion. Suttles appealed this decision

to the Ohio Supreme Court. On November 21, 2001, the Ohio Supreme Court dismissed Suttles'

appeal, finding that it did not involve a substantial constitutional question.

### C.  Federal Habeas Corpus Action

On November 12, 2002, the petitioner filed the instant petition for writ of habeas corpus. The

petition contains the following grounds for relief:

Case No. 02-cv-2218
Gwin, J.

Ground One:     Mr. Suttles' constitutional rights to due process and against self-incrimination, as guaranteed by the Fifth and Fourteenth Amendments, and his rights to a fair trial, as guaranteed by the Sixth and Fourteenth Amendments, were violated when the prosecutor's closing argument to the jury posited the defendant's silence as evidence of the defendant's guilt.

Ground Two:     Mr. Suttles' right to due process, guaranteed by the Fifth and Fourteenth Amendments, was violated when he was convicted in the absence of sufficient evidence to sustain the State's burden on each and every element of the offense.

Ground Three:   Mr. Suttles' multiple and consecutive sentences for firearms specifications violate the Double Jeopardy and Due Process Clauses of the Fifth and Fourteenth Amendments as the predicate crimes for those specifications were committed as part of the same act or transaction. Ohio Revised Code Section 2929.14(D)(1)(b) specifically prohibits the imposition of multiple sentences for firearms specifications when the predicate crimes for those specifications are committed as part of the same act or transaction. The multiple and consecutive sentences received by Mr. Suttles exceed the punishment provided for by the Ohio General Assembly and therefore the sentences violate the Double Jeopardy and Due Process Clauses of the Fifth and Fourteenth Amendments.

Ground Four:    Mr. Suttles was denied his right to the effective assistance of counsel at trial and on direct appeal, in violation of the Sixth and Fourteenth Amendments. The refusal of the Ohio Court of Appeals to reopen the defendant's appeal violated Mr. Suttles' rights to due process and to the effective assistance of counsel on appeal. Mr. Suttles' appellate counsel failed to raise trial counsel's blatant conflict of interest, as well as three other instances of ineffective assistance of trial counsel and three other substantive trial errors, as assignments of error on appeal.

The petitioner subsequently withdrew grounds one and two in his traverse, which he filed with this

Court on September 12, 2003.

In his report and recommendation, Magistrate Gallas addressed all four grounds for relief,

despite the fact the petitioner had withdrawn grounds one and two.  With regard to the first ground,

-8-

Case No. 02-cv-2218
Gwin, J.

the Magistrate found that the prosecutor's closing remarks referring to Suttles' silence prior to his

arrest were arguably limited to impeachment of Suttles' self-defense claim.  As such, the Magistrate

concluded that Suttles failed to establish that the prosecutor's statements led to a state court decision

that was either unreasonable or in violation of clearly established federal law.  As to the second

ground for relief, the Magistrate found that the State set forth sufficient evidence to support Suttles'

convictions.

       With regard to Suttles' third and fourth grounds for relief, the Magistrate first found that the

trial court did not violate the double jeopardy or due process clauses of the United States

Constitution by imposing consecutive sentences for each of the three firearm specifications included

in Suttles' convictions.  Additionally, the Magistrate found no violation of Suttles' Sixth Amendment

right to effective assistance of counsel.

       Suttles raises the following five objections to the Magistrate Judge's report and

recommendation:

   1.   Petitioner Suttles objects to the Magistrate's finding that his appellate counsel
        was not ineffective for failing to raise trial counsel's conflict of interest in Mr.
        Suttles' direct appeal because no conflict of interest existed.

   2.   Mr. Suttles objects to the Magistrate's finding that certain of Mr. Suttles'
        arguments concerning ineffective assistance of counsel constituted "a new
        series of arguments" not fairly presented to the Supreme Court of Ohio and
        Mr. Suttles objects to the Magistrate's conclusion that these arguments are
        procedurally defaulted.

   3.   Mr. Suttles objects to the Magistrate's finding that appellate counsel
        was not ineffective for failing to raise the trial court's error in
        disallowing evidence concerning the reasonableness of Mr. Suttles'
        belief in the necessity of self-defensive action and the trial court's
        error in preventing Mr. Suttles from presenting a defense to the
        charges against him.

-9-

Case No. 02-cv-2218
Gwin, J.

4.      Mr. Suttles objects to the Magistrate's findings that the multiple consecutive sentences imposed in his case do not violate his rights under *Missouri v. Hunter*.

5.      Mr. Suttles objects to the Magistrate's decision to deny his motion to expand the record.

The Court addresses each of Suttles' objections below.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), signed on April 24, 1996, governs the standards of review for state court decisions.  Title 28 U.S.C. § 2254 (d) of the AEDPA states that federal courts cannot grant a habeas petition for any claim that the state court adjudicated on the merits unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  *See also Miller v. Francis*, 269 F.3d 609, 614 (6th Cir. 2001).

The United States Supreme Court described the standard for application of  § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000).  To justify a grant of habeas relief under the "contrary to" clause, "a federal court must find a violation of law clearly established by holdings of the Supreme Court, as opposed to its dicta, as of the time of the relevant state court decision."  *Miller*, 269 F.3d at 614 (internal quotations omitted) (quoting *Williams,* 529 U.S. at 362).  Meanwhile, "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but

Case No. 02-cv-2218
Gwin, J.

unreasonably applies that principle to the facts of the prisoner's case." *Williams,* 529 U.S. at 413.

The Sixth Circuit has noted that, even if a federal court could determine that a state court incorrectly

applied federal law, the court still could not grant relief unless it also finds that the state court ruling

was unreasonable. *Simpson v. Jones*, 238 F.3d 399, 405 (6th Cir. 2000), citing *Machacek v.*

*Hofbauer*, 213 F.3d 947, 953 (6th Cir. 2000), *cert. denied*, 531 U.S. 1089 (2001).

Moreover, the factual findings of a state court are presumed to be correct.  A federal court

may only diverge from a state court's factual findings if Petitioner shows by clear and convincing

evidence that the findings are erroneous.  *See* 28 U.S.C. § 2254(e)(1).

### III.  DISCUSSION

The petitioner's objections to the Magistrate Judge's report and recommendation relate only

to his third and fourth grounds for relief.  As discussed above, the petitioner has withdrawn his first

and second grounds for relief.  To the extent that Magistrate Gallas addressed the first two grounds

for relief, the petitioner raised no objections to the Magistrate's findings.  As a result, this Court

reviews only the petitioner's third and fourth grounds for relief.  Prior to reaching those issues,

however, the Court first addresses the petitioner's objection to the Magistrate Judge's order denying

the petitioner's motion to expand the record.

### A.  Petitioner's Motion to Expand the Record

On November 21, 2003, Petitioner Suttles filed a motion with this Court to expand the record

with regard to his habeas petition.  In a marginal entry, dated August 8, 2004, Magistrate Judge

Gallas denied the petitioner's motion.  Petitioner now asks that this Court review that Magistrate

Judge's decision.

Petitioner seeks expansion of the record to include records from two Summit County, Ohio

-11-

Case No. 02-cv-2218
Gwin, J.

Common Pleas Court cases involving George Thomas.  The records in question provide evidence that Thomas's attorneys negotiated favorable plea agreements for Thomas in exchange for his testimony against Suttles.  Such evidence is relevant to Suttles' ineffective assistance of counsel claim. One of the subgrounds of the ineffective assistance of counsel claim is that Suttles' trial counsel operated under an impermissible conflict of interest because the counsel represented both Suttles and Thomas, one of the key witnesses against Suttles, during the time period directly prior to Suttles' second trial.

The respondent maintains that the new records were available when Suttles filed his *Murnahan* motion and that Suttles had ample opportunity to present the materials to the state courts. Consequently, the respondent argues that the Court should not now permit Suttles to rely on these records.

Responding, the Petitioner argues that this Court has discretion to expand the record under Rule 7 of the Rules Governing Habeas Corpus Cases.  Rule 7(a), entitled "Expansion of Record," provides: "If the petition is not dismissed summarily the judge may direct that the record be expanded by the parties by the inclusion of additional materials relevant to the determination of the merits of the petition."

Courts have allowed habeas petitioners to present new evidence under Rule 7 to the extent that the evidence merely supplemented claims that the petitioner properly presented at the state court level.  *See Vasquez v. Hillery*, 474 U.S. 254, 260 (1986).  District Courts typically enjoyed broad discretion as to whether newly introduced evidence serves to supplement a previously presented claim or transforms that claim into a "wholly different animal."  *Morse v. Trippett*, No. 00-1868, 2002 WL 257207, at **6 (6th Cir. Feb. 20, 2002) (unpublished decision).

-12-

Case No. 02-cv-2218
Gwin, J.

The evidence that Suttles now seeks to submit is directly related to his ineffective assistance of appellate counsel claim.  Suttles offers the evidence solely to supplement pre-existing evidence showing that his trial counsel, the State, and the trial court were all well aware of trial counsel's conflict of interest with regard to George Thomas.  Keeping in mind the need to "provide the meaningful federal review of constitutional claims that the writ of habeas corpus has contemplated throughout its history," the Court grants Petitioner Suttles' motion to expand the record.  *Vasquez*, 474 U.S. at 260.

### B.  Double Jeopardy Claim

In Suttles' third ground for relief, he contends that the trial court's imposition of multiple consecutive sentences in connection with his conviction of various firearm specifications violates the double jeopardy and the due process clauses of the Fifth and Fourteenth Amendments.  Suttles argues that the trial court could not impose consecutive sentences for each of the firearm specifications because the predicate crimes for the specifications were committed as part of the same act or transaction.

In his report and recommendation, Magistrate Judge Gallas found that the state appellate court's determination that the predicate crimes were not part of the same act or transaction did not result in a decision that was contrary to or an unreasonable application of clearly established federal law.  The petitioner objects to this finding.

The double jeopardy clause of the Fifth Amendment prohibits multiple punishments for the same offense.  *See Brown v. Ohio*, 432 U.S. 161, 165 (1977).  However, this prohibition is not absolute.  It does not curb the legislature's freedom to "define crimes and fix punishments."  *Id.* Thus, where the legislature has specifically authorized the imposition of multiple sentences under

-13-

Case No. 02-cv-2218
Gwin, J.

statutes arguably proscribing the same conduct, the cumulative punishment does not violate the

double jeopardy clause.  *See Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983).

When faced with a claim that an individual's sentence violates the double jeopardy clause,

courts examine whether the legislature intended to authorize the trial court to impose such a

sentence.  *See id.* ("Where consecutive sentences are imposed at a single criminal trial, the role of

the constitutional guarantee is limited to assuring that the court does not exceed its legislative

authorization by imposing multiple punishments for the same offense."); *Whalen v. United States*,

445 U.S. 684, 688 (1980) (White, J., concurring in part and concurring in judgment) ("[T]he question

whether punishments imposed by a court after a defendant's conviction upon criminal charges are

unconstitutionally multiple cannot be resolved without determining what punishments the Legislative

Branch has authorized.").

With regard to firearm specifications, the Ohio General Assembly specifically limited the

extent to which courts can impose multiple consecutive sentences.[1]   Ohio Rev. Code §

2929.14(D)(1)(b) (formerly § 2929.71(B)) provides that when a defendant is convicted of or pleads

guilty to multiple firearm specifications, the sentencing court "court shall not impose more than one

prison term on an offender under division (D)(1)(a) of this section for felonies committed as part of

---

[1] In concluding that Suttles' sentence does not violate double jeopardy protections, the Magistrate Judge cited to case law suggesting he may have misconstrued Suttles' argument. Specifically, the Magistrate relied on state appellate court decisions discussing whether it is appropriate to tack on a firearm specification to an underlying offense of having a weapon while under a disability.  *See State v. Russell*, No. 97 CA 37, 1998 WL 357546, at *32-33 (Ohio App. 4th Dist. June 30, 1998) (unpublished decision);  *State v. Broadus*, 14 Ohio App.3d 443, 472 N.E.2d 50 (10th Dist. 1984) (abrogated on other grounds); *State v. Greco*, NO. CA95-06-101, 1996 WL 31147, at *3 (Ohio App. 12th Dist. Jan. 29, 1996) (unpublished decision).   Indeed, courts have held that this does not violate double jeopardy protections, as the Ohio General Assembly specifically authorized courts to attach such enhancements to underlying felony convictions. *See id.*  However, Suttles does not argue that the state court's attachment of a firearm specification to the count of having a firearm while under a disability is unconstitutional.  The issue that Suttles raises is wholly distinct from the question posed in *Russell*, No. 97 CA 37, 1998 WL 357546, at *32-33.

-14-

Case No. 02-cv-2218
Gwin, J.

the same act or transaction."

As the Court discussed above, the state appellate court in the instant case ordered that Suttles be sentenced to a three separate terms of three years actual incarceration for the firearm specifications attached the underlying felony convictions of murder, having a weapon while under a disability, and tampering with the evidence.  The appellate court further ordered that Suttles serve these sentences consecutively.  In reaching this decision, the appellate court found that Suttles did not commit the underlying offenses as part of the same act or transaction.  Specifically, the court of appeals stated:

> None of these offenses occurred at the same time, or at the same place, and none of these acts were directed toward a single purpose or objective.  Suttles committed the charge of having a weapon while under disability when he picked up the gun and walked across the bar. Suttles committed murder when he shot Cunningham.  Suttles committed the act of tampering with evidence after he shot Cunningham, when he attempted to hide the rifle by giving it to a friend.  Each of these acts were motivated by different purposes or objectives.  Accordingly, this Court concludes that these offenses were not part of the "same act or transaction."

*Suttles*, No. 19453, 2000 WL 1706382, at *7.[2]  The Court now finds that the appellate court overstepped its bounds by imposing separate consecutive sentences on each firearm specification.

The Ohio Supreme Court set forth the proper standard for determining whether a defendant's underlying felony convictions form part of the same act or transaction for the purposes of Ohio Rev. Code § 2929.14(D)(1)(b) in *State v. Wills*, 69 Ohio St. 3d 690 (1994).  *Wills*, 69 Ohio St. 3d at 690,

---

[2] The state appellate court did not consider the issue of double jeopardy when making its ruling as Suttles did not raise any federal constitutional issues prior to his appeal to the Ohio Supreme Court.  Without explanation, the Ohio Supreme Court held that Suttles' arguments lacked merit.  *State v. Suttles*, 91 Ohio St.3d 1472, 744 N.E.2d 193 (Ohio 2001) (table).  Because the state court failed to articulate its reasons for finding Suttles' appeal to be without merit, this Court is "obligated to conduct an independent review of the record and applicable law to determine whether the state court decision is contrary to federal law, unreasonably applies clearly established law, or is based on an unreasonable determination of the facts in light of the evidence presented. . . . That independent review, however, is not a full, de novo review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA."  *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000) (citations omitted).

Case No. 02-cv-2218
Gwin, J.

involved the robbery of two unrelated individuals within a very short period of time.  The defendant

essentially targeted one victim, completed the robbery, and then crossed the street and targeted

another victim.  The Jury found the defendant guilty of two counts of aggravated robbery, each with

a firearm specification.  In reviewing the imposition of two firearm specification sentences, the Ohio

Supreme Court upheld the imposition of multiple consecutive sentences, finding that the robberies,

though they occurred one after the other, were not part of the same act or transactions.  In this

holding, the Ohio Supreme Court defined "transaction" to mean "a series of continuous acts bound

together by time, space and purpose, and directed toward a single objective."  *Id*. at 691.

In its decision, the appellate court cites the correct standard from *Wills*, 69 Ohio St. at 691.

However, it also discusses the "separate animus" standard for determining whether the merger of two

*primary* offenses is appropriate under Ohio Rev. Code § 2941.25.  *Suttles*, No. 19453, 2000 WL

1706382, at *7 (discussing the standard established in *State v. Mughni*, 33 Ohio St. 3d 65, 67, 514

N.E.2d 870, 872 (1987)).  Section 2941.25 states that:

> (A) Where the same conduct by defendant can be construed to constitute two or more
> allied offenses of similar import, the indictment or information may contain counts
> for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar
> import, or where his conduct results in two or more offenses of the same or similar
> kind committed separately or with a separate animus as to each, the indictment or
> information may contain counts for all such offenses, and the defendant may be
> convicted of all of them.

The above standard would have been appropriate had Suttles argued, for instance, that the crimes

of having a weapon while under a disability and murder should merge.

However, Suttles does not argue that his underlying offenses should merge.  Instead, Suttles'

claims that the appellate court erred in ordering that Suttles serve multiple consecutive sentences for

-16-

Case No. 02-cv-2218
Gwin, J.

each of the firearm specifications.  The "separate animus" test that is used to determine whether

merger is appropriate does not apply in this context.  *See State v. Brown*, No. 18591, 1998 WL

487039, at *4 (Ohio App. 9th Dist. Aug. 19, 1998) (unpublished opinion) ("The 'transaction' test

is not the same as the test to determine whether each crime was committed with a separate animus,

authorizing the trial court to punish each as a separate offense."); *State v. Moore*, 161 Ohio App.3d

778, 789-90, 832 N.E.2d 85, 94 (7th Dist. 2005) (recognizing the difference between Ohio Rev.

Code § 2941.25 and § 2929.14(D)(1)(b) and discussing the tests applicable to each); *State v. Salinas*,

124 Ohio App.3d 379, 388, 706 N.E.2d 381, 387 (11th Dist. 1997) (finding that the Wills court

impliedly rejected the "separate animus" test for determining whether firearm specifications should

merge); *State v. Walker*, No. 17678, 2000 WL 873222, at *12 (Ohio App. 2nd. Dist. June 30, 2000)

(unpublished decision) (stating that the "same act or transaction" test is a "broader concept than the

separate animus test associated with [§] 2941.25"); *State v. White*, 71 Ohio App.3d 550, 554, 594

N.E.2d 1087, 1090 (4th Dist. 1991) ("the 'same act or transaction' determination should not be made

in reference to the separate animus test of [§] 2941.25"); *State v. Jones*, No. 98AP-639, 1999 WL

155703,  (Ohio App.10th Dist. Mar. 18, 1999) (finding that facts that may have established "that the

crimes were committed as separate acts under [§] 2941.25" were "insufficient . . . to establish that

the offenses occurred in separate transactions under [§] 2929.71.").

　　　　After  reviewing  the  appellate  court's  decision,  this  Court  finds  that  the  appellate  court

confused the two standards.  To the extent that the appellate court did apply *Wills*, 69 Ohio St. at

691, it interpreted the test in such a narrow manner as to render the *Wills* standard indistinguishable

from the "separate animus" test.  For example, the court of appeals stated that "Suttles committed

the charge of having a weapon while under disability when he picked up the gun and walked across

Case No. 02-cv-2218
Gwin, J.

the bar. Suttles committed murder when he shot Cunningham."  *Suttles*, No. 19453, 2000 WL

1706382, at *7.  However, the mere fact that all of the elements necessary to establish the crime of

possession of a weapon while under a disability were complete the moment that Suttles retrieved the

weapon does not mean that act was not bound together with the act of shooting Cunningham.  *See*

*Jones*, No. 1248, 1999 Ohio App. LEXIS 1248, at *10 ("The prosecution points to no evidence that

the offenses were committed separately, other than the fact that the elements of having a weapon

while under disability were present prior to the commission of the felonious assault. While that fact

may establish that the crimes were committed as separate acts under [Ohio Rev. Code §] 2941.25,

it is insufficient in this case to establish that the offenses occurred in separate transactions under [§

2929.14(D)(1)(b)]."); *Moore*, 161 Ohio App.3d at 791, 832 N.E.2d at 95 (rejecting the prosecution's

argument on the basis that under the prosecution's "reasoning, an 'act or transaction' justifying

multiple firearm specifications is no different than proving that separate crimes have been

committed").  Consequently, this Court must reevaluate Suttles' sentence, applying the correct

"separate act or transaction" test.

Under that standard, the key to whether separate offenses constitute a single transaction for

purposes of the firearm specifications is the defendant's overall purpose in committing the acts, and

whether that purpose strings the acts together.  In the instant case, the court of appeals failed to

recognize the overarching purpose of Suttles' acts.  Focusing instead on the slight difference in time

and space between Suttles' initial possession of the weapon and the shooting, both the state appellate

court and the Magistrate Judge found that the instant case was similar to *Wills* and held that the

underlying crimes amounted to separate transactions.  Indeed, the two robberies at issue in *Wills* also

took place within minutes and within a short distance.  However, the *Wills* court emphasized the

-18-

Case No. 02-cv-2218
Gwin, J.

different purposes of the two robberies, not their temporal proximity.

In the instant case, the court finds that Suttles' act of retrieving the firearm from behind the bar, using the firearm, and then relinquishing the firearm all served the same purpose – dealing with the threat that Cunningham posed.  Suttles retrieved the weapon *because* of his altercation with Cunningham, not solely so that he would be in possession of a weapon.  The act of retrieving the gun is tied both chronologically and logically to the shooting.  Additionally, when Suttles gave the firearm to another Zulu member after the shooting, he fulfilled his original purpose or objective.  As such the underlying offences of murder, having a weapon while under a disability, and tampering with evidence all form part of the same "act or transaction," under Ohio Rev. Code § 2929.14(D)(1)(b), and the state court could not impose a separate consecutive sentence on the firearm specification attached each offense.  *See Jones*, No. 1248, 1999 Ohio App. LEXIS 1248, at *9-10 (holding that where the defendant broke into the victim's house, discharged his weapon in the stairwell, and then struck the victim on the head with his gun, the separate charges of felonious assault and possession of a weapon while under a disability were directed toward the single objective of assaulting the woman and thus formed part of the same act or transaction); *State v. Berry*, Nos. 97AP-964, 98AP-256, 1999 WL 437217, at *19 (Ohio App. 10th Dist. June 29, 1999) (unpublished opinion) (holding that where a defendant shot a drug dealer after breaking into the dealer's house to rob him, the court could sentence the defendant for only one firearm specification because the underlying crimes of murder, burglary, robbery, kidnapping, and having a weapon while under a disability were bound together by the single purpose of committing a crime against the dealer).

By ordering the imposition of separate consecutive sentences on the firearm specifications, the Ohio appellate court exceeded its sentencing authority.  Consequently, the Court finds that the

-19-

Case No. 02-cv-2218
Gwin, J.

appellate court's decision is contrary to the clearly established principle that a sentencing court

violates the double jeopardy clause of the Fifth Amendment when it imposes unauthorized multiple

punishments for the same conduct.

### C.  Ineffective Assistance of Appellate Counsel

Finally, the Court reaches Suttles' fourth ground for relief.  With that claim, Suttles argues

that his appellate counsel was ineffective due to his failure to raise several important issues on

appeal.  In his habeas petition, Suttles asserted seven instances of trial court error that his appellate

counsel omitted from the direct appeal.  Suttles has since withdrawn several of these subgrounds for

appellate counsel error.[3/] Of the remaining four, the first three involve allegations that trial counsel

was ineffective due to: (1) counsel's simultaneous representation of the state's chief witness against

Suttles; (2) their failure to contest the unavailability of a state's witness, thereby allowing that

witness' former trial testimony to be read into the record; and (3) their failure to proffer evidence of

potential witness bias resulting from the witness' relationship with the investigating police officer.

Finally, Suttles also argue that his appellate counsel was ineffective for failing to appeal the trial

court's decision to exclude certain evidence related to the reasonable use of deadly force.

In his report and recommendation, Magistrate Judge Gallas found that subgrounds two and

three are procedurally barred due to Suttles' failure to raise these issues when he asserted his

ineffective assistance of appellate counsel claim in his *Murnahan* motion.  With regard to the first

and fourth subgrounds, the Magistrate reviewed Suttles arguments but found them unpersuasive.

As such, The Magistrate concluded that appellate counsel's failure to raise these issues on appeal

---

[3/] In his traverse, Suttles withdrew his assertions that: (1) trial counsel was ineffective for failing to suppress evidence f his statements to the police; (2) the trial court allowed the use of peremptory challenges in a racially discriminatory manner; and (3) prosecutorial misconduct interfered with Suttles' due process and fair trial rights.

Case No. 02-cv-2218
Gwin, J.

did not violate Suttles' constitutional rights.

Suttles objects to each of the Magistrate Judge's findings.  For the reasons stated below, this Court finds that Suttles' appellate counsel's determination not to raise certain issues on appeal amounted to ineffective assistance but was not so prejudicial as to result in a violation of Suttles' Sixth Amendment right to effective assistance of counsel.

1. Procedural Default

Federal courts cannot review claims asserted in a habeas petition unless the petitioner has first presented those claims to the state courts.  *See Riggens v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991) ("A state prisoner must first give the state courts a fair opportunity to remedy any constitutional infirmity in the conviction before seeking relief in a federal court.").  Ordinarily, issues raised for the first time in a habeas corpus petition are remanded to the state court.  However, to the extent the petitioner had opportunity to raise those issues in state court, but failed to do so, the claims are typically procedurally barred under state procedural law.  *Id.*  In order to overcome a procedural default, the petitioner must demonstrate both cause and prejudice.  *McBee v. Grant*, 763 F.2d 811, 817 (6th Cir. 1985).

The respondent argues that Suttles waived his right to raise any allegation of trial counsel misconduct because he failed to raise these issues on direct appeal.  In response, Suttles contends that he asserts trial counsel misconduct as the basis for his ineffective assistance of appellate counsel claim.  The latter claim is properly before the Court because Suttles gave the state court opportunity to review this claim through his *Murnahan* motion.[4]

---

[4] In his traverse, Suttles additionally argued that this court should review the merits of the underlying claims independently, asserting his ineffectiveness of appellate counsel claim as cause for the procedural default of the (continued...)

Case No. 02-cv-2218
Gwin, J.

Of the four subgrounds for appellate counsel error that Suttles now asserts, Magistrate Judge

Gallas found that the second and third subground were procedurally barred because Suttles did not

base his *Murnahan* motion on these alleged errors.  To preserve a claim of ineffective assistance of

appellate counsel for habeas review, a petitioner must give the state courts adequate opportunity to

review the claim.  In Ohio, this may be accomplished by raising the issue on direct appeal to the

Ohio Supreme Court or by bringing a motion for reconsideration before the Ohio Court of Appeals.

*See State v. Murnahan*, 63 Ohio St. 3d 60, 65, 584 N.E.2d 1204, 1208 (Ohio 1992); Ohio R. App.

P. 26(B).

Under amended Rule 26(B) of the Ohio Rules of Appellate Procedure,

> A defendant in a criminal case may apply for reopening of the appeal from
> the judgment of conviction and sentence, based on a claim of ineffective assistance
> of appellate counsel.  An application for reopening shall be filed in the court of
> appeals where the appeal was decided within ninety days from journalization of the
> appellate judgment unless applicant shows good cause for filing at a later time.

Ohio R. App. P. 26(B)(1).  The *Murnahan* court stated that claims of ineffective assistance of

appellate counsel can be "raised in an application for reconsideration in the court of appeals or a

direct appeal to this court [the Ohio Supreme Court] . . . ."  *Murnahan*, 63 Ohio St. 3d at 65, 584

N.E.2d at 1208.  The general allegation of ineffective assistance of appellate counsel is insufficient

to preserve specific theories of ineffective assistance that the petitioner failed to present to the state

courts.  *See Morse*, No. 00-1868, 2002 WL 257207.

---

[4]/(...continued)
underlying claims.  Suttles did not raise these claims as independent grounds for relief in his petition.  Instead, he raises
the issues only within the context of his ineffective assistance of appellate counsel claim.  As such, this Court cannot
now review the underlying claims themselves for error, but is constrained to review them only to the extent that they
form the basis of Suttles' ineffective assistance of appellate counsel claim.

Case No. 02-cv-2218
Gwin, J.

In his habeas petition, Suttles characterizes his claim of ineffective assistance of appellate counsel differently than in his *Murnahan* motion.  The second and third subgrounds for appellate counsel error that Suttles asserts in his habeas petition involve the trial counsel's failure to contest the unavailability of one of the State's witnesses, Shakira Garlock, and the subsequent failure of trial counsel to proffer evidence of Garlock's bias.  In Suttles' *Murnahan* motion, he did not raise the issues related to trial counsel's handling of Garlock's testimony as separate and distinct sub-grounds.  Nonetheless, Suttles included these arguments within the discussion of his first assignment of error.  For example, Suttles alleged that:

> The only other eyewitness, Shakira Garlock, who had testified at the first trial, did not show up for the second trial.  The State claimed, but did not prove, that Ms. Garlock was unavailable.  Defense counsel were given fifteen minutes to return to their office to research the issue of unavailability. . . . [W]hen they returned to the courtroom, they immediately conceded the issue of Ms. Garlock's unavailability. Had effective defense counsel been present, they would have argued that the State had not shown sufficient evidence of her unavailability.
>
> . . .Keeping Ms. Garlock's testimony out of the second trial was all the more important because of an erroneous evidentiary decision by the trial court in the first trial.  This decision prevented defense counsel from impeaching Ms. Garlock with evidence of bias–her informant relationship with certain police detectives giving her a reason to lie in order to score points with the police for future consideration. . . . Defense counsel did not proffer any evidence of Garlock's bias, perhaps assuming that the trial court would simply refuse to accept it.

(*Murnahan* mot., at 6-7) (internal citations omitted).

The Court thus finds that Petitioner Suttles' second and third subgrounds for his claim of ineffective assistance of appellate counsel are not procedurally barred.  The Court now turns to the merits of Petitioner Suttles' ineffective assistance of appellate counsel claim, considering each of the four subgrounds Suttles discusses in his traverse.

2. Merits

-23-

Case No. 02-cv-2218
Gwin, J.

The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel. *Roe v. Flores-Ortega*, 528 U.S. 470, 476 (2000). In *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984), the United States Supreme Court articulated a two prong test that a petitioner must satisfy to prevail on an ineffective assistance claim. A petitioner must show: (1) that the performance of counsel fell "below the objective standard of reasonableness," and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

In the instant case, the petitioner must show that his appellate counsel's failure to raise certain claims on appeal was so egregious that it amounts to ineffective assistance. This type of claim is often difficult to prove. The United States Supreme Court has held that an attorney need not "raise every nonfrivolous claim" on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Instead, the attorney may select to pursue those claims that are likely to maximize the chance of success on appeal. *Smith v. Robbins*, 528 U.S. 259, 288 (2004). Therefore, to demonstrate ineffective assistance, the petitioner must show that the issue that appellate counsel chose not to present "was clearly stronger than issues that counsel did present." *Id.* at 289.

a. *Strickland* Prong One: Objectively Unreasonable Representation

On appeal, Petitioner Suttles' counsel asserted the following claims: (1) that the prosecutor's conduct during closing arguments violated Suttles' Fifth Amendment rights; (2) that the verdict was against the manifest weight of the evidence; and (3) that Suttles' sentence amounted to an abuse of discretion. Suttles now argues that appellate counsel should have raised issues of ineffective assistance of trial counsel and the trial court's exclusion of evidence.

To prevail, Suttles must first show the omitted issues are nonfrivolous. *Smith*, 528 U.S. at

-24-

Case No. 02-cv-2218
Gwin, J.

285 ("Respondent must first show that his counsel was objectively unreasonable . . . that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them."). Only then will the Court reach the issue of prejudice.

i. Trial Counsel's Conflict of Interest

Suttles first argues that his trial counsel was ineffective due to a conflict of interest that arose from counsel's simultaneous representation of one of the State's chief witness, George Thomas. The conflict first surfaced on August 11, 1998, only nine days prior to Suttles' first trial, when the trial court appointed Annette Powers to represent Suttles. At that time, the Court recognized that a potential conflict existed due to Powers' simultaneous representation of Thomas in an unrelated felony case. The court attempted to resolve the conflict by ordering another attorney, Renee Green, to cross-examine Thomas at trial.

Powers continued to represent Thomas as Thomas negotiated a plea with the State. According to Suttles, the State conditioned the plea agreement upon Thomas' agreement to testify against Suttles. During the first trial, Green cross-examined Thomas, but never asked him if he expected to receive any consideration from the State in exchange for his testimony. The jury in Suttles' first trial was unable to reach a verdict. Sometime prior to Suttles' second trial, which began on December 7, 1998, Powers helped to secure a plea deal for Thomas. Additionally, Green represented Thomas at his plea hearing, thus arguably creating an additional conflict of interest involving Green's continued representation of Suttles.

Prior to Suttles second trial, the State filed a motion in limine asking the court to prohibit both Powers and Green from questioning Thomas about his intervening felony convictions on cross-examination. With this motion, the State argued that a conflict of interest existed because Suttles'

-25-

Case No. 02-cv-2218
Gwin, J.

attorneys represented both him and Thomas.  The trial court overruled the State's motion.  However, Green never questioned Thomas about his conviction or plea agreement during the second trial.

Interestingly, mere days before the trial, the State allowed Thomas to withdraw his plea. Also at that time, Powers withdrew as counsel from Thomas' case.  The State makes much of this in its response to Suttles' petition, arguing that Powers' withdrawal somehow remedied the conflict of interest.  However, after Suttles' second trial, Powers and the State entered into a different plea agreement, one that gave Powers a two-month lesser sentence than the earlier plea agreement.

Several courts have recognized that attorney conflict of interest can result in ineffective assistance of counsel.  *See Mickens v. Taylor*, 535 U.S. 162, 166 (2002); *Moss v. United States*, 323 F.3d 445, 455 (6th Cir. 2003).   In fact, the United States Supreme Court has held that where a defendant demonstrates that his attorney actively represented conflicted interest, a presumption of prejudice arises.  *Mickens*, 535 U.S. at 166-67.  However, this presumption is not absolute.  It is strongest in cases in which the defendant or his counsel objects to the conflict of interest prior to or during trial.  *See Holloway v. Arkansas*, 435 U.S. 475, 489-92 (1978).  In those cases, the trial court has a duty to inquire into the conflict, and failure to do so can result in an automatic reversal of any subsequent conviction.  *Id*.

In contrast, where a defendant makes no objection, "a showing of (1) an actual conflict; and (2) an adverse effect on his counsel's performance will void the conviction."  *Moss*, 323 F.3d 455; *see also Mickens*, 535 U.S. at 174; *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980) ("a defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief.").

In the instant case, Suttles made no objection to his attorneys' conflict of interest at the time

-26-

Case No. 02-cv-2218
Gwin, J.

of trial.  As such, Suttles must prove not only the existence of the conflict, but also that the conflict

adversely affected his counsel's representation of him.  In determining that Suttles had not met this

burden, Magistrate Judge Gallas relied heavily two facts: (1) that Attorney Powers no longer

represented Thomas as of the second trial and (2) that Thomas had withdrawn his plea prior to the

second trial.  Magistrate Gallas reasoned that because Thomas had withdrawn his plea, he was no

longer under any obligation to testify against Suttles and neither Powers nor Green had reason to

probe the issue on cross-examination.

This Court cannot agree with Magistrate Gallas' recommendation.  By the time of Suttles'

second trial, both of his attorneys had previously represented Thomas throughout Thomas's attempts

to secure a plea agreement with regard to the unrelated felony charges he faced.  Thus, both were

burdened with a conflict of interest.  As the Sixth Circuit has pointed out, "a defendant's counsel's

prior representation of a government witness can sometimes lead to ineffective assistance. The

principal problem in such cases is that a counsel's cross-examination of his prior client may be

inhibited by his knowledge of privileged information." *Takacs v. Engle*, 768 F.2d 122, 125 (6th Cir.

1985).  This is precisely the problem in the instant case.  Both Powers and Green had knowledge of

plea negotiations between Thomas and Suttles.   The fact that neither attorney was actively

representing Suttles at the time of the second trial did not extinguish the duty they owed him.

Similarly, the fact that Thomas withdrew his plea mere days before the trial does not make

inquiry into possible bias any less relevant.  Though Thomas was no longer testifying under the force

of an actual plea agreement, there remained a strong possibility that he expected to receive

consideration for his testimony.  In fact, the very nature of his plea withdrawal, which occurred at

the eleventh hour, just after the State lost its motion to prohibit questioning about the agreement,

Case No. 02-cv-2218
Gwin, J.

would tend to indicate that perhaps the prosecution had allowed Thomas to withdraw his plea in an attempt to mask any potential bias that may have clouded his testimony at Suttles' trial.  Moreover, Thomas entered a plea agreement shortly after Suttles' trial, only to a lesser sentence than the plea withdrawn in December.

Under such circumstances, a reasonable attorney would have raised the issue during cross-examination.  Other than the conflict of interest looming over their representation of Suttles, Powers and Green had every reason to challenge Thomas's incentive for testifying against Suttles.  The Court thus finds that Suttles trial counsel's failure to cross-examine Thomas with regard to the ongoing plea negotiations between him and the state amounted to ineffective assistance of counsel.

ii.  Trial Counsel's Failure to Object to the Unavailability of State Witness Shakira Garlock

Suttles further claims that appellate counsel failed to provide effective representation when it did not challenge trial counsel's concession of Shakira Garlock's unavailability to testify and counsel's failure to failure to proffer evidence of Garlock's bias.  As set forth below, the Court finds that trial counsel's decision to concede the issue of Garlock's unavailability was not so objectively unreasonable as to amount to ineffective assistance of counsel.

Other than George Thomas, Shakira Garlock was the State's only other eyewitness to the shooting of Cunningham.  Garlock testified at the first trial, but was not present at the second trial. Due to her absence, the State moved to admit her testimony from the first trial, arguing that she was unavailable.  The State argued that it had repeatedly attempted to contact Garlock, but had been unable to locate her.  The record shows that  the State issued a subpoena to Garlock on October 28, 1998.  This subpoena was returned unexecuted on October 30, 1998, with a note that the witness was "not found."  (Garlock Subpoena, Pl.'s ex. R.)  Beyond this attempt, the record is unclear as to what

-28-

Case No. 02-cv-2218
Gwin, J.

additional action the government took to locate Garlock.

Apparently, during the week prior to trial, the prosecution learned that Garlock was likely staying with her mother.  The prosecutor attempted to reach Garlock at that residence, but Garlock's mother said that Garlock no longer lived there.  When Cunningham's fiancé called the same number in the presence of the prosecutors, she was able to reach Garlock.  The State tried to subpoena Garlock once again after she did not appear at trial and dispatched police officers to find her.  Based on these unsuccessful attempts, the trial court concluded that Garlock was attempting to avoid testifying.

Initially, Suttles' trial counsel objected to the admission of Garlock's former testimony.  The court allowed Suttles' counsel fifteen minutes to research the issue of Garlock's availability.  When the trial resumed, Suttles' counsel conceded the issue and withdrew her objection to the use of Garlock's earlier testimony.  Suttles now claims that the State did not provide sufficient evidence of Garlock's unavailability and that if defense counsel had objected on that basis, Garlock's former testimony would not have been properly admitted into evidence.  Furthermore, Suttles claims that the State's case would have been significantly weakened absent Garlock's testimony, as she was the only witness to claim to have heard Suttles threaten Cunningham.

Ohio Rule of Evidence 804 allows certain hearsay evidence to be admitted in the event of the declarant's unavailability.  The rule defines "unavailability" to include situations in which the declarant: " . . . (2) persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so; . . . [or] (5) is absent from the hearing and the proponent of the declarant's statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." Ohio R. Evid. 804(A).

-29-

Case No. 02-cv-2218
Gwin, J.

In practice, courts must balance the practical necessities warranting this rule with an individual's constitutional right to confront all witnesses against him. *See* U.S. CONST. amend. VI; *Brumley v. Wingard*, 269 F.3d 629, 639 (6th Cir. 2001). The United States Supreme Court held that this balance is struck when the proponent of the witness demonstrates the witness' unavailability and the opponent had a prior opportunity to cross examine the witness. *Crawford v. Washington*, 541 U.S. 36, 54 (2004). To show that the witness is unavailable, the proponent must at least demonstrate that it made a "good faith effort" to secure the witness' presence at trial. *Barber v. Page*, 390 U.S. 719, 724-25 (1968) ("[A] witness is not 'unavailable' for purposes of the foregoing exception to the confrontation requirement unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial."). Discussing this standard, the United States Supreme Court stated, "'The lengths to which the prosecution must go to produce a witness ... is a question of reasonableness.' The ultimate question is whether the witness is unavailable despite good-faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate." *Ohio v. Roberts*, 448 U.S. 56, 74-75 (1980) (citations omitted).

Thus, for example, in *United States v. Quinn*, 901 F.2d 522, 528 (6th Cir. 1990), the Sixth Circuit held that the prosecution did not make a good faith effort to secure a witness' presence where they issued a subpoena mere days before the trial. In that case, an officer attempted to serve the subpoena upon the witness at her apartment, but learned that she had moved a month earlier. The officer then attempted unsuccessfully to locate the witness at her mother's house, after learning on the first day of trial that the witness may have been staying there. In determining that these efforts were insufficient, the court noted that "[n]o testimony was offered that any county or city records

-30-

Case No. 02-cv-2218
Gwin, J.

were checked, that anyone tried to follow-up on the manager of the apartment building for a forwarding address, or that anyone tried to check with relatives prior to the trial.  Further, it would appear that no one checked with any possible employers . . ..” *Id.*

In contrast, *Eastham v. Johnson*, 338 F. Supp. 1278, 1281 (E.D. Mich. 1972) provides an example of what amounts to a sufficient showing of unavailability.  There, a detective attempting to locate a witness learned from the witness' neighbors that she had recently moved out of her apartment.  The detective then interviewed the witness' landlord, parents, and sisters.  None of those individuals knew the whereabouts of the witness, though one sister remarked that she may have moved to California.  Finally, the officer also checked with the local school system to see if any of the witness' children were still registered.  The court held that any further attempt to locate the witness would likely have been meaningless and that the detective had made a good faith effort to secure her presence.  Similarly, in *State v. Bragg*, 2 Ohio App.3d 193, 195, 441 N.E.2d 272, 274 (10th Dist. 1982), the court found that the state's several unsuccessful attempts to subpoena a witness at different addresses amounted to a good faith effort to locate the witness.

Based on an evaluation of the preceding case law, this Court finds that Suttles' counsel may have committed error by conceding to Garlock's unavailability.  However, the Court does not find that this error was so unreasonable as to amount to ineffective assistance under the Sixth Amendment.  The facts on record indicate that the prosecution did not make a particularly strong effort to locate Garlock.  The State issued only one subpoena prior to trial, which was returned unexecuted.  From the record, it appears that the State did nothing to attempt to locate Garlock until about a week before trial.  At that point, the State called Garlock's mother, who stated that Garlock was no longer staying with her.  The state did not issue another subpoena or send officers to look for

Case No. 02-cv-2218
Gwin, J.

Garlock until after the trial had already begun.

However, the record also shows that Garlock had been in contact with Cunningham's fiancé, was aware that the State wanted her to testify at the second trial, and was avoiding the prosecution. The trial court concluded as much, suggesting that even had Suttles' counsel objected to the assertion that Garlock was unavailable, the trial court would have overruled the objection.

Of course, trial counsel's objection would have at least preserved the matter for appeal. However, the appellate court would have reviewed the trial court's admission of Garlock's testimony for abuse of discretion. *See State v. Noling*, 98 Ohio St.3d 44, 52, 781 N.E.2d 88, 101 (Ohio 2002) (citing *State v. Issa*, 93 Ohio St.3d 49, 64, 752 N.E.2d 904 (Ohio 2001)) ("The admission of evidence lies within the broad discretion of a trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice."). "To constitute an abuse of discretion, the ruling must be more than legal error; it must be unreasonable, arbitrary, or unconscionable." *State v. Dunlap*, No. 84440, 2004 WL 2847843, at *3 (Ohio App. 8th Dist. 2004) (unpublished opinion) (citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (Ohio 1983)). Under that standard, it is highly unlikely that the appellate court would have overturned the trial court's decision. Having found the claim of trial counsel error in this instance to be without merit, the Court does not find that Suttles' appellate counsel was ineffective for failing to raise the issue on appeal.

iii. Trial Counsel's Failure to Proffer Evidence of Garlock's Bias

Suttles also argues that trial counsel should have proffered evidence of Garlock's informant relationship with certain police detectives when Garlock's testimony was read into evidence at the second trial. However, Suttles fails to show that rises to the level of ineffective assistance.

-32-

Case No. 02-cv-2218
Gwin, J.

Specifically, Suttles offers nothing to show prejudice, or that there was a reasonable probability that had trial counsel proffered such evidence, Suttles would have prevailed.

Suttles' attorneys did question Garlock about her informant relationship during the first trial. At that time, the prosecution objected, arguing that Garlock was not acting as an informant in the instant case and that the issue was irrelevant to her testimony. The trial court sustained the objection. At the second trial, the attorneys read into the record only those portions of Garlock's testimony that survived objection. Suttles' counsel did not at that time make a renewed attempt to proffer evidence of the informant relationship. Suttles now claims that omission to have been error. However, Suttles does not claim that the trial judge would have ruled differently and admitted such evidence during the second trial. Neither does Suttles offer any argument to show a reasonable likelihood that the appellate court would have overturned the trial judge's decision to sustain the prosecution's objection to that evidence. Therefore, the Court cannot find that trial counsel's decision not to proffer the evidence at the second trial was such an egregious error that it amounts to ineffective assistance. As this claim lacks merit, appellate counsel was not ineffective for failing to raise the issue on appeal.

iv.  Trial Court's Exclusion of Evidence Related to the Reasonable Use of Deadly Force

Finally, for his fourth subground, Suttles argues that his appellate counsel was ineffective due to his failure to raise the trial court's exclusion of evidence related to the reasonableness of the use of deadly force against an armed attacker. In evaluating this claim, Magistrate Gallas concluded that this argument lacked merit because the trial court properly excluded the evidence on the basis that it was irrelevant to Suttles' assertion of self-defense. This Court also finds that Suttles' argument is not well taken, albeit for different reasons.

-33-

Case No. 02-cv-2218
Gwin, J.

During trial, Suttles attempted to introduce testimony regarding the "Tueller Drill," a method that the Akron Police Department uses to determine how many feet per second an average person running with a weapon can cover.  Defense counsel questioned a testifying police officer about a local newspaper article that described the drill and reported that an attacker running with a weapon such as a club could cover twenty-one feet in about one and a half to two seconds.  Additional testimony at trial placed Cunningham less than twenty feet away from Suttles prior to the shooting. Defense counsel argued that the Tueller Drill evidence was relevant to the issue of self-defense and directly rebutted the prosecution's argument that Cunningham was not close enough to Suttles to pose a threat.

The trial court ultimately decided to exclude the evidence on the basis that the evidence was irrelevant to the issue of self-defense, or whether Suttles reasonably believed that he was in danger of death or great bodily harm.  Specifically, the trial judge noted that the results of the drill could not have influenced Suttles' state of mind as he had no evidence of the drill at the time of the shooting. Petitioner Suttles now argues that the evidence is relevant to the determination of whether Suttles' subjective belief was reasonable.

To establish self-defense, a defendant must prove: (1) that the defendant was not at fault in creating the situation giving rise to the affray; (2) that the defendant had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape was through the use of such force; and (3) that the defendant did not violate any duty to retreat or avoid the danger.  *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240, 1244 (Ohio 2002).  Though the second prong of this test is highly subjective, it does involve a reasonableness component–the defendant must show that his belief in the treat was reasonable.  *See State v. Napier*, 105 Ohio

-34-

Case No. 02-cv-2218
Gwin, J.

App.3d 713, 721-722, 664 N.E.2d 1330,1336 (1st Dist. 1995) ("[T]he jury must consider the entire

situation and determine whether the person's actions were reasonable under the circumstances.");

*State v. Fritz*, 163 Ohio App. 3d 276, 284, 837 N.E.2d 823, 829 (2nd Dist. 2005); *Dunlap*, No.

84440, 2004 WL 2847843, at *5 (finding that the defendant could not assert self defense as he had

no reasonable grounds to believe the victim posed a threat of death or serious bodily harm).

In the instant case, this Court agrees that the Tueller evidence is not relevant to proving

Suttles' state of mind at the time of the shooting. However, the evidence is relevant to the issue of

whether Suttles' subjective belief that Cunningham posed a threat was reasonable. The prosecution

put this aspect of the self-defense standard directly at issue by arguing that Cunningham was too far

away from Suttles to pose an actual threat. The Tueller evidence provides some standard with which

the jury could have evaluated the significance of the distance between Suttles and Cunningham.

Still, Suttles has not shown that the trial court's exclusion of this evidence amounts to an

abuse of discretion, such that an appellate court would have overturned the decision. *See Noling*,

98 Ohio St.3d at 52, 781 N.E.2d at 101 (citing *Issa*, 93 Ohio St.3d at 64, 752 N.E.2d at 904) ("The

admission of evidence lies within the broad discretion of a trial court, and a reviewing court should

not disturb evidentiary decisions in the absence of an abuse of discretion that has created material

prejudice."). "To constitute an abuse of discretion, the ruling must be more than legal error; it must

be unreasonable, arbitrary, or unconscionable." *Dunlap*, No. 84440, 2004 WL 2847843, at *3 (citing

*Blakemore*, 5 Ohio St.3d at 217, 450 N.E.2d at 1140). As the trial court noted, its ruling did not

prevent defense counsel from arguing that Cunningham was within a short enough distance of Suttles

to constitute a threat. Furthermore, the jury was free to determine whether they believed that it was

reasonable for Suttles to believe that a man armed with a bat, running toward him from a distance

Case No. 02-cv-2218
Gwin, J.

of fifteen to twenty feet posed an imminent threat of death or serious bodily harm.  The Court thus

finds that appellate counsel's decision not to raise the issue on appeal did not fall below an objective

standard of reasonableness.

b. Strickland Prong Two: Prejudice

Having found that it was objectively unreasonable for Suttles' appellate counsel not to raise

the issue of  trial counsel's conflict of interest, the Court now addresses the prejudice prong of

*Strickland*.  Under this prong, the petitioner must show that there exists a reasonable probability that

had appellate counsel raised the underlying issues, the petitioner would have prevailed on appeal.

*See Greer v. Mitchell*, 264 F.3d 663 (6th Cir.2001).  "A reasonable probability is a probability

sufficient to undermine the confidence in the outcome."  *Strickland*, 466 U.S. at 694.

As discussed above, Suttles presents a strong argument that his trial counsel's conflict of

interest affected their defense of Suttles in regard to Thomas' testimony.  However, Suttles fails to

show that his appellate counsel's failure to raise the issue on appeal so prejudiced Suttles' case as

to amount to a Sixth Amendment violation.

Viewing Thomas's testimony as a whole, in combination with the testimony of other

witnesses' such as Shakira Garlock, the Court finds the impeachment value of Thomas' plea

negotiations with the State to be minimal.  Even without that evidence, the jury had a sufficient basis

to doubt Thomas's objectivity.  First, Thomas testified that he was Cunningham's cousin, and that

the two were close. (Trial Tr. vol. 2, 380:6, 382:17-382:18, Dec. 10, 1998.)  Furthermore, Thomas's

testimony repeatedly aligns him with Cunningham on the night in question.  Thomas arrived at the

club with Cunningham.  (*Id.* at 349:10-349:15.)  They went to the club with their own group of

friends and not to celebrate Suttles' birthday.  When an altercation arose between Cunningham and

-36-

Case No. 02-cv-2218
Gwin, J.

the Zulu Club members, Thomas tried to assist Cunningham.  In fact, Thomas was outside with Cunningham when Cunningham pulled the bat out of his car and started running toward Suttles.  (*Id.* at 358:1-361:20.)  Thomas additionally testified that after the shooting, he tried to assist Cunningham by stopping the bleeding.  When he realized he could not save Cunningham, he became angry and tried to beat down the door to the club.  Thomas then went to Cunningham's apartment to retrieve a gun, apparently to respond to Suttles, but by the time her got back to the Zulu Club, the police had already arrived.  (*Id.* at 363:10-363:22, 365:23-366:5, 367:1-367:15.)

This testimony shows that Thomas was not merely an objective bystander.  The jury was fully aware of Thomas' strong connection to the victim and his anger about the shooting.  In addition, the jury also heard testimony that Thomas was an inmate at the Summit County Jail at the time of the trial.  (*Id.* at 348:19-348:22.)  In fact, Thomas appeared in court wearing an orange jail uniform.  Knowing all of this, the jury still found Thomas' testimony credible.  It is unlikely that questioning Thomas about a possible plea agreement would have tipped the scales for Suttles.

Finally, Thomas' testimony strongly called into question Suttles' self-defense claim.  According to Thomas, Zulu members assaulted Cunningham prior to the shooting.  Thomas also testified that when Suttles shot Cunningham, Suttles was standing in the doorway of the club surrounded fellow Zulu members and Cunningham was more than fifteen feet away.  (*Id.* at 361:19-362:7.)  Thomas' portrayal of the events thus minimizes the actual threat that Cunningham posed.

The Court thus finds that the trial counsel's failure to impeach Thomas with evidence of a possible plea negotiation and Suttles' appellate counsel's failure to raise this issue on appeal did not likely prejudice the outcome of the case.  Consequently, Suttles can prove no Sixth Amendment violation of his right to effective assistance of counsel.

Case No. 02-cv-2218
Gwin, J.

IV. CONCLUSION

For the reasons stated above, this Court finds that the imposition of separate consecutive sentences for the firearm specifications attached to Suttles' underlying convictions violates the double jeopardy clause of the Fifth Amendment.  However, Suttles' claim of ineffective assistance of appellate counsel is not well taken.   The Court thus GRANTS Petitioner Suttles' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 only with regard to the petitioner's sentence. The Court remands the instant suit to the Summit County, Ohio Court of Common Pleas to impose a sentence consistent with the Court's ruling herein.

IT IS SO ORDERED.

Dated: March 24, 2006                              s/          *James S. Gwin*
                                                   JAMES S. GWIN
                                                   UNITED STATES DISTRICT JUDGE